**In re the Marriage of Louise Ann PICOU, Petitioner/Appellant,**

v.

**Charles Louis PICOU, Sr., Respondent/Respondent.**

**No. 56391.**

Missouri Court of Appeals, Eastern District, Southern Division.

May 15, 1990.

Kenneth C. McManaman, Kathleen A. Wolz, Cape Girardeau, for petitioner, appellant.

Robert R. Peura, Ste. Genevieve, for respondent, respondent.

GRIMM, Judge.

In this action to modify a child support award and recover arrearages, petitioner Louise Ann Picou (mother) appeals from the trial court's judgment. We modify the child support award and affirm.

Mother raises three points of error. First, the trial court erred in granting respondent Charles Louis Picou, Sr., (father) "credit for unpaid child support during periods of time when he had actual temporary physical custody of one or more children whose legal and primary physical custody was with [mother] pursuant to the [dissolution decree]...." We disagree, because the trial court properly applied the equitable exceptions doctrine.

Second, the "trial court erred in failing to increase the child support award with respect to the minor children remaining in [mother's] custody...." We agree and increase the child support award to $140.00 per month per child. Third, the "trial court erred in failing to assess [mother's] attorney fees against [father]...." We disagree, because the trial court did not abuse its broad discretion.

## I. Background

The parties' marriage was dissolved on April 15, 1981. Pursuant to a separation agreement, mother was awarded custody of the parties' three minor daughters: Melanie, Sara, and Susannah. Father received custody of the parties' two minor sons: Matthew and Charles.

Under the decree, father was ordered to "pay to [mother] as child support for the three minor children under her control the sum of $300.00 per month as and for child support, said support shall be reduced by thirds upon the 21st birthday or earlier emancipation of the minor children." Further, the decree ordered, mother "shall not be obligated to pay any support to [father] for the two minor children under his control and custody."

Father paid the monthly child support in 1981 and 1982. Father paid no child support in 1983 or 1984. From 1985 through 1988, father paid only part of the child support ordered in the decree.

Melanie lived with mother until November, 1981, when, at Melanie's request, father moved her to his home. Melanie lived with father 69 of the next 81 months.

Sara moved to father's home in June, 1987, and has lived continuously with him since that time. Susannah has always lived with mother.

As to the two boys, they basically lived with father. Matthew did live with mother for two months in the summer of 1986, as well as for three or four months in 1987. Charles lived with father until Charles married in July, 1987.

## II. Credit for Child Support

Mother's first point alleges the trial court erred in granting father "credit for unpaid child support during periods of time when he had actual temporary physical custody of one or more children whose legal and primary physical custody was with [mother] pursuant to the [dissolution decree]...." She contends that the "equitable exceptions doctrine" should not be applied because mother did not consent to the changes of custody.

■ The general rule is that a parent ordered to pay child support may not provide that child support through means other than payment of the court ordered amount to the other parent. *Meyer v. Meyer*, 493 S.W.2d 42, 45 (Mo.App.W.D.1973). Missouri, however, like most jurisdictions, allows "exceptions under appropriate circumstances and [holds] that credit should

be given [the obligated parent] when dictated by equitable considerations." *Id.*

■ We view the evidence in the light most favorable to the judgment. It discloses that Melanie, in November 1981, did not want to attend high school in the district where mother lived. She told mother that she wanted to go to high school in the town where father lived. Melanie "missed the friends that she had went to school with." Mother called father and told him that Melanie wanted to live with him. Mother gave him no reason; father went and picked Melanie up and took her to his home. Although testifying that she did not give her consent to the move, mother said she realized that she "could not hold [Melanie] there if she didn't want to be there."

In January, 1986, mother was in the process of obtaining another divorce. At that time, Sara and Susannah were living with her. On January 15, she had her attorney write father concerning past due and current child support.

The letter, in part, said, "you were obligated to pay $100.00 per month for each child that [mother] continued to take care of in her home." The letter added, "The easiest way would be for you to pay her $50.00 per week as and for child support. If you will start now, meaning this week, making those payments and continue making them regularly, then it will not be necessary for her to take any further action with regard to the back child support which is now due in an amount in excess of $6,500.00." Father paid mother $150 in January and $200 per month in 1986 *.

In June, 1987, Sara told father that she too wanted to live with him and Melanie. Father and mother had a phone conversation. Mother told father "to take care of Sara." He went and picked Sara up, and she moved in with father and the other children. Thereafter, father paid $100.00 per month to mother unless other children were staying with her.

In *Meyer*, 493 S.W.2d at 46, our colleagues in the Western District said that if

"mother ... agreed to the treatment of support as handled by the father, then under the authorities cited, the father is entitled to the credit which he claims." There, "the father followed a consistent pattern of deductions in which the mother acquiesced without any dissent for a period of years." From this long continued practice, the court concluded that "mother impliedly agreed to the father taking a pro rata credit for those of the children who lived with him from time to time." *Id.*

Here, when father paid mother child support, he paid only for those children living with her. From 1986, to the time of the hearing in September, 1988, the amount paid was both raised and lowered, depending on whether Melanie or Sara was with father or mother. Nothing in the record indicates mother made any objection to this practice.

In addition to mother's implied agreement to father taking pro rata credit, her attorney's letter appears to confirm this arrangement. The letter told father to pay $50.00 per week at a time when mother had two daughters living with her. If mother did not agree with father receiving pro rata credit for Melanie who was then living with him, she obviously would have sought $75.00 per week.

The gist of mother's argument is that she is entitled to $300.00 per month, regardless of whether the daughters were living with her or whether she was expending any money for their support. As this court said in *Steger v. Steger*, 728 S.W.2d 651, 652 (Mo.App.E.D.1987), "The facts suggest [mother] consented, at least impliedly, to a de facto change of custody, and waived any claim to support for the children when they were not in her custody." Mother's first point is denied.

## III. Child Support

■ For her second point, mother alleges the "trial court erred in failing to increase the child support award with respect to the minor children remaining in [mother's] custody...." She contends the denial

---

* In July, August, and September, Matthew was at mother's house for several weeks. Father sent mother an additional $25 for each week Matthew was with mother.

of an increase was against the weight of the evidence.

At the time of hearing, father's net weekly take-home pay was about $505.00; mother's was about $219.00. In addition, mother receives $1600.00 per year from a government farm conservation program.

Two months before the hearing, father started paying mother $35.00 per week per child. He did this because he knew "that it takes more money."

In her brief, mother asks that we order father to pay $140.00 per month per child as child support. Father concedes that there have been substantial changes in circumstances since the marriage was dissolved in 1981. Pursuant to Rule 84.14 which directs us to "dispose finally of the case", the trial court's order dated January 5, 1989, is amended to order father to pay $140.00 per month per child as child support.

### IV. Attorney fees

As her final point, mother alleges trial court error in failing to assess her attorney fees against father.

In considering whether to award attorney fees, § 452.355 RSMo 1986 directs a trial court to consider all relevant factors including the "financial resources of both parties." A trial court has broad discretion in the award or denial of attorney fees. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo.banc 1979).

Here, mother's statement of property disclosed assets she valued at about $64,000.00, with debts of about $5,200.00. Father's statement listed property valued at about $56,000.00, however his debts were shown at about $32,000.00. In addition, the trial court's order determined that he owed mother $9,050.00 delinquent child support.

The trial court's denial of attorney fees to wife does not constitute an abuse of its broad discretion. Point denied.

### V. Conclusion

The trial court's order denying an increase in child support is modified to award $140.00 per month per child as support. In all other respects, the judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.