**John R. GORDON, Appellant,**

v.

**Michale A. GORDON, Respondent.**

**No. WD 51972.**

Missouri Court of Appeals,
Western District.

May 21, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 1996.

Thomas E. Hankins, Gladstone, for appellant.

Gary M. Steinman, Schulz, Bender, Maher, Lee, Sexton & Hill, P.C., Gladstone, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

This appeal arises out of the trial court's denial of Petitioner–Appellant John R. Gordon's Motion to Modify the child support payments he must make to Respondent Michale A. Gordon for the care of their daughter Sarah. He asserted modification was justified by substantial and continuing changes in circumstances arising out of Mrs. Gordon's increased income and out of his direct payment of all of Sarah's college room, board, tuition, fees and expenses. The court below denied the motion to modify without opinion.

We reverse and remand. Mr. Gordon's payment of Sarah's college expenses constituted, in this case, a change in circumstances so substantial and continuing as to make the terms of the prior child support award unreasonable. The motion to modify, therefore, should have been granted under Section 452.370 RSMo 1994.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Gordons' marriage was dissolved in March 1993. In conjunction with the dissolution, the parties entered into a separation agreement whereby Mr. Gordon agreed that when the parties' three children reached college age he would pay their reasonable expenses for college tuition, room and board, and books, not to exceed the amount charged at The University of Missouri at Columbia at the time of the child's entrance into college.[2] The original decree gave custody of all three children—Sarah, Luke, and Philip—to Mrs. Gordon and provided that Mr. Gordon would pay his former wife $650 per month in child support for the children.

In 1994, the decree was modified to give custody of Luke and Philip to Mr. Gordon. Custody of Sarah remained with Mrs. Gordon. New Form 14's were figured based on this new split custody arrangement and on Mr. Gordon's increased income, and the parties stipulated that the net result was that Mr. Gordon would pay to Mrs. Gordon a total of $775 per month in child support.[3]

Sarah continued to make her home with her mother in Gladstone, Missouri until August 1995, although she spent almost half of her time in the summer of 1995 visiting at her father's home. She then moved into a dormitory in Kirksville, Missouri, and began attending college in Kirksville. As of the time of trial in October 1995, Sarah was still living in the dormitory. Accordingly, Sarah was no longer living with her mother on a day-to-day basis and Mrs. Gordon no longer was incurring day-to-day living and household expenses for Sarah, at least during the school week. Sarah did return to the Kansas City area many weekends during the semester, however, spending about equal time with each parent. A letter written by Sarah and admitted into evidence states that Sarah loves and has spent substantial time with both parents but considers her home to be with her mother and that she intends to make her home with her mother during the summer months while attending college.

---

1. All statutory references herein will be to RSMo 1994 unless otherwise noted.

2. Neither Mr. or Mrs. Gordon claims that the definition of Mr. Gordon's obligation for college expenses is too vague and indefinite to be enforced, and hence we do not address that issue. See Leahy v. Leahy, 858 S.W.2d 221 (Mo. banc 1993).

3. In connection with the 1994 modification, both parties submitted proposed Form 14's which listed differing amounts for child support owed by each party, which were offset to arrive at a net figure of child support owed by Mr. Gordon. The net amount under the parties' Form 14's varied slightly, but they were able to resolve these differences and stipulate that Mr. Gordon would owe a net child support obligation for Sarah of $775 per month.

In accordance with the parties' separation agreement, Mr. Gordon has paid for all of Sarah's college expenses (totaling $4,148) as they were incurred in the summer and fall of 1995 and up to the time of trial. In July, 1995, Mr. Gordon moved to modify his $775 child support obligation on the bases that he was providing all of Sarah's support, that Mrs. Gordon was no longer supporting Sarah on a day-to-day basis, that Sarah thus was in effect in his custody, that Mrs. Gordon's income had increased more than 20 percent, that this evidence constituted a *prima facie* case of changed circumstances and that his direct payment of Sarah's college expenses constituted such a substantial and continuing change of circumstances as to make unreasonable his continued payment of $775 per month in child support for Sarah to Mrs. Gordon.

Mrs. Gordon opposed the proposed modification. She denied her income had increased 20 percent,[4] and further argued that, because Mr. Gordon had always planned to pay for Sarah's college expenses, the fact that he was doing so did not constitute a change in circumstances and did not constitute a *de facto* change in custody.

The court below denied the motion to modify without indicating the basis for the denial. This appeal followed.

## II. *LEGAL ANALYSIS*

### A. *Standard of Review*

■ The standard of review of denial of a motion to modify a child support obligation is set out in *Morrison v. Meadors*, 892 S.W.2d 786, 788 (Mo.App.1995). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true the evidence and permissible inferences which may be drawn favorably to Respondent as the prevailing party in this case and disregard contrary testimony. *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App.1986). "Deference is accorded the trial judge even if there is evidence which might support a different conclusion." *Reese v. Reese*, 885 S.W.2d 39, 40 (Mo.App.1994).

### B. *Refusal to Modify Decree Based on 20 Percent Change in Form 14 Amount Was Not Error*

Mr. Gordon claims on appeal that he showed that the amount of child support appropriate under Form 14 changed more than 20 percent, and therefore he was entitled to a modification of child support under Section 452.370.1, which states in relevant part:

> Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.... *If the application of the guidelines and criteria set forth in supreme court rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, then a prima facie showing has been made* of a change of circumstances so substantial and continuing as to make the present terms unreasonable.

(emphasis added).

■ First, and contrary to Mr. Gordon's contentions, Section 452.370.1 does not *require* a trial court to grant a motion to modify simply because the Form 14 calculation has changed 20 percent or more from the date of the last child support order. Section 452.370.1 simply states that such a 20 percent or greater change in the amount of child support which would be due under Form 14 constitutes a *prima facie* showing "of a change of circumstances so substantial and continuing as to make the present terms

---

4. Mrs. Gordon earns an annual salary of about $38,000 as a school counselor. Mrs. Gordon also has a number of investment and stock funds which increased in value over $20,000 in the first three quarters of 1995. Mrs. Gordon, however, did not liquidate any of her investment accounts during 1995 to pay for living or household expenses. Mrs. Gordon denied that she would make more than $46,000 in 1995.

unreasonable." *Id.* Such a showing may be countered by contrary evidence.

Second, Mr. Gordon did not present evidence from which the trial court was required to find that the Form 14 amount changed by more than 20 percent. The evidence which Mr. Gordon presented to support his claim that such a change occurred consisted of evidence: (1) that Mrs. Gordon's investments had increased substantially in value; (2) that Mr. Gordon was now paying Sarah's college expenses (amounting to nearly $5,000 as of the time of trial) for room, board, tuition, fees and expenses; and (3) that Sarah was no longer residing with Mrs. Gordon on a day-to-day basis, and that this lowered Mrs. Gordon's expenses for Sarah. In fact, he argued that he paid for all of Sarah's expenses and was the *de facto* custodial parent, and that this supported modification of the child support order.

In making these arguments, Mr. Gordon seems to assume that a *prima facie* case is made out simply by showing that he has increased his expenditures by 20 percent or more, or by showing that Mrs. Gordon's assets have increased in value by 20 percent or more. In *McMickle v. McMickle,* 862 S.W.2d 477, 480–81 (Mo.App.1993), we specifically rejected the argument that a 20 percent change in a single factor, such as income, would invoke the presumption of changed circumstances. We held that, to the contrary, "when determining if there is a prima facie showing of a change of circumstances, one computation of child support is to be made utilizing [all] the guidelines and criteria set forth in all the subsections of Rule 88.01." *Id.* at 481.

■ We find that Mr. Gordon has failed to meet this latter standard. Gross income is defined in Form 14 to include "income from any source" and includes such earnings as capital gains, interest, dividends, annuities and pension and retirement benefits. *See* Form 14, "Directions for Completion of Form 14." While Mr. Gordon suggests that the increase in the value of Mrs. Gordon's stock constitutes capital gains, we do not agree

that the evidence below supported this conclusion. It showed only that Mrs. Gordon *would* have had a capital gain *if* she had liquidated certain of her assets on a particular date. She did not liquidate those holdings, however, and Form 14 does not provide for consideration of the increased value of stocks or other marital or non-marital property held by a party when determining child support. Instead, the amount of child support due under Form 14 is calculated based on each parent's *income.*[5]

■ We also disagree with Mr. Gordon that the 20 percent threshold was met by his evidence that he paid for almost all of Sarah's college expenses. The Directions for Completion of Form 14 state that extraordinary expenses such as the cost of "special or private elementary and secondary schools" and similar academic, social, athletic or cultural activities may be included in figuring the amount of child support due under Form 14. The Directions, however, do not provide that post-secondary expenses are automatically considered in determining the Form 14 amount itself. Rather, Comment E for Use to Form 14 states that:

> "Post-secondary educational expenses are not factored into the Schedule of Basic Child Support obligation. Post-secondary educational expenses can be ordered by the court if it is determined by the parents or the court to be appropriate for the parents to contribute to the costs of such programs ... Post-secondary educational expenses *can* be included on Form 14 as extraordinary expenses (line 4e). In an appropriate case payments may be ordered to be made directly to an educational institution or to the child as approved by the provisions of section 452.340, RSMo 1986."

(emphasis added).

This Comment clearly does not *require* the judge to consider college expenses in determining child support under Form 14, and here it is conceded that neither party requested the trial court to consider these expenses in determining the Form 14 amount

---

**5.** Of course, a trial court might consider a substantial increase in assets as a non-Form 14 factor which rebuts the appropriateness or justness of the amount of child support determined under Form 14.

itself. To the contrary, the record confirms that Mr. Gordon did not include the college expenses in his Form 14 at all, but rather simply argued that these expenses in effect rebutted the appropriateness of the amount of child support otherwise required under Form 14.

As noted above, the statute says only that a *prima facie* case of a substantial change of circumstance is made out where there is a 20 percent or greater change in the Form 14 amount itself. *McMickle*, 862 S.W.2d at 481. As the college expenses were not included in the Form 14 determination, they thus could not result in any change in the Form 14 amount, and thus could not create a *prima facie* case of a substantial change in circumstances.

▋ Finally, Mr. Gordon suggests that the 20 percent threshold was met because custody of Sarah was, in effect, transferred from Mrs. Gordon to him. Mr. Gordon claims that he was paying for most of Sarah's living expenses and that Sarah spent equal time with him as with Mrs. Gordon. Therefore, he claims, the Form 14 amount should be calculated as if he had custody of Sarah. The Form 14 he submitted below took this approach, listing Sarah as if she were in his custody. Not surprisingly, this resulted in more than a 20 percent change in the Form 14 amount, as previously the Form 14 amount had been calculated based on Mrs. Gordon's custody of Sarah.

▋ The court below did not err in rejecting Mr. Gordon's attempt to calculate his Form 14 as if Sarah were in his custody. Child custody cannot be changed by the unilateral actions of one or both parents. *State ex rel. Rosener v. Lasky*, 552 S.W.2d 728, 730 (Mo.App.1977)(parents by private arrangement cannot change custody order of court); *Betterton v. Betterton*, 752 S.W.2d 417, 418 (Mo.App.1988)(custody decree is binding as to rights of parties and cannot be changed unless there is a proceeding for that purpose).

▋ The lower court's 1994 order in this case provided that Mrs. Gordon was to have custody of Sarah, and ordered Mr. Gordon to pay certain amounts in child support for her.

Mr. Gordon does not claim that Mrs. Gordon is not a fit custodian, but simply that she is not acting as custodian at all. Of course, where the custodial parent voluntarily relinquishes control of a child to the noncustodial parent for a period in excess of 30 days, the obligation of the noncustodial parent may abate in whole or in part for the period in question. § 452.340(2). *See also Picou v. Picou*, 789 S.W.2d 522, 523–24 (Mo.App. 1990); *Steger v. Steger*, 728 S.W.2d 651, 652 (Mo.App.1987) (both holding that where *de facto* custody is transferred to noncustodial parent, custodial parent waives right to seek child support for period children were not in her custody).

Here, however, Mrs. Gordon has not voluntarily relinquished control of Sarah to Mr. Gordon. Rather, Sarah is simply away at college and is not living with either parent. Both Sarah and Mrs. Gordon continue to think of Mrs. Gordon's house as Sarah's home. Thus, there has been no *de facto* change in custody, and it would not have been proper to figure child support as if Sarah were now in Mr. Gordon's custody.

For the above reasons, we find that Mr. Gordon did not make out a *prima facie* case of changed circumstances by showing a 20 percent change in the amount of child support due under Form 14.

Even in the absence of such evidence, however, under § 452.370 a motion to modify should still be granted if "there is other evidence of changed circumstances so substantial and continuing that the original order of support is unreasonable. This change of circumstances is independent of any prima facie showing under § 452.370.1." *McMickle*, 862 S.W.2d at 481. As discussed below, we find that Mr. Gordon *did* present sufficient other evidence of changed circumstances to meet this burden.

### C. *A Substantial and Continuing Change of Circumstance was Demonstrated*

Mr. Gordon argues that, even without consideration of any change in the Form 14 amount itself, he showed such a substantial and continuing change of circumstance as a

result of his payment of Sarah's college expenses as to require grant of his motion to modify. In opposition, Mrs. Gordon argues that Mr. Gordon's payment of college expenses should not be considered a change in circumstances at all, for the parties' separation agreement contemplated that he would pay those expenses. He was aware of his promise to pay them at the time of the original award in 1993, and at the time of the first modification in 1994. Thus, she argues, he is barred from arguing that his current payment of those expenses should affect the child support due to her from him.

As noted above, because the court below did not make findings of fact and conclusions of law, we do not know the basis on which the trial court denied the motion to modify. The trial court could have reached this result either: (1) if it accepted Mrs. Gordon's legal argument that the payment of college expenses could not constitute a substantial change in circumstances because Mr. Gordon had always planned to pay such expenses; or (2) if it believed that it could consider Mr. Gordon's payment of the college expenses, but did not believe that they constituted a substantial change in circumstances as a factual matter. We do not believe that either rationale is supportable in this case.

■ Whether college expenses can constitute a change in circumstances where the non-custodial parent voluntarily agreed to pay the expenses as a part of a separation agreement is a legal issue for *de novo* determination by this Court. *See Unlimited Equipment Lines v. Graphic Arts Centre Inc.*, 889 S.W.2d 926, 932 (Mo.App. 1994)(upon review of court-tried case, appellate court will independently evaluate trial court's conclusions of law). Mrs. Gordon cites no cases to support her position that such an agreement precludes a later determination of a substantial and continuing change in circumstances, and we have found none.

Such a holding would not be supportable. That is because, while Mr. Gordon may have planned to pay for Sarah's college expenses at the time of the dissolution, he was not in fact paying for such expenses then, nor at the time the dissolution decree was first modified. Moreover, the actual amount of college expenses he would have to pay was not and could not be known at the time of dissolution. Thus, those expenses were not, and could not be, considered in determining the $775 monthly child support figure for Sarah. Now Mr. Gordon is paying those college expenses and does want them considered in determining his fair and appropriate child support obligation to Mrs. Gordon. Those college expenses, amounting to nearly $5,000 as of the time of trial alone, were substantial.

It has long been recognized that payment of college expenses can constitute a substantial change of circumstances under Section 472.370.1. The issue is not the foreseeability of the college expenses, but whether their amount makes the child support previously paid to the custodial spouse unreasonable. As was stated in *Weber v. Weber*, 804 S.W.2d 756, 758 (Mo.App.1990):

> The increasing needs of growing children are valid reasons for modification if it is demonstrated that these conditions render the existing order unreasonable.... College expenses are properly considered as bearing upon the amount of child support.

*Accord Gable v. Gable*, 816 S.W.2d 287, 290–91 (Mo.App.1991).

It should be noted that in most cases involving payment of college expenses, the *custodial* parent is in the position of asking the trial court to *increase* the child support payments made to the custodial parent by the non-custodial parent so that the custodial parent will have sufficient funds to meet the expense of college. The issue in such cases is usually how much of an increase in support is needed to cover a fair portion of the increased expenses of the custodial parent as a result of the attendance of the child at college. *Id.*

■ The present case presents the converse of the usual situation because the non-custodial parent (Mr. Gordon) is making direct payments of expenses to Sarah and the college. He therefore seeks a *reduction* in child support to Sarah's mother as custodian so as to avoid duplication in payment of Sarah's living expenses by paying them once

to Mrs. Gordon and again to the college or Sarah. Mr. Gordon does not request that Mrs. Gordon assist in paying such expenses. Rather, he plans to abide by his agreement at the time of their separation that he would pay all college expenses, subject to certain limitations not relevant here.

Mr. Gordon's argument is simply that, now that the time has arrived for him to pay Sarah's college expenses (including room and board and many other related expenses as well), and now that he is paying these expenses directly to her or to the college, it is unjust and unreasonable to also require him to continue paying Mrs. Gordon the same amount which he was paying her when she had the day-to-day care of Sarah while Sarah was still in high school.[6]

We believe the principle set out in *Weber, Gable,* and similar cases—that the expenses of college can render an existing child support decree unreasonable—is equally applicable in these circumstances. In fact, in *Gable,* the father agreed that he should be responsible for college costs, but argued that such costs should not "include a redundancy for living expenses already included by child support payments...." 816 S.W.2d at 291. This Court remanded for the trial court to consider college costs, and what was properly included in them, in determining whether the Form 14 amount was rebutted and whether a new child support award should issue. Moreover, this Court has recently reaffirmed that it is proper for the trial court to consider payments to colleges and other payments made to those other than the custodial parent in determining child support. *Jones v. Jones,* 903 S.W.2d 277, 283–84 (Mo.App. 1995). *See also Bogusky v. Bogusky,* 710

S.W.2d 445, 446–47 (Mo.App.1986) (when child began to attend college, court would need to lower child support previously being paid for private boarding school in order to avoid requiring father to pay twice for child's support).

Mr. Gordon has already paid nearly $5,000 for Sarah that he was not previously paying, and these expenses will continue. He is paying most of Sarah's living expenses, relieving Mrs. Gordon of much of that burden. While these are not factors which are required to be considered under the basic provisions of Form 14, they clearly can and do rebut the appropriateness of the Form 14 amount otherwise determined and do constitute a substantial change in circumstances.[7] On such facts, as a matter of law, Mr. Gordon's continued payment of $775 per month is unreasonable.

For these reasons, we reverse and remand with directions that the court below grant Mr. Gordon's motion to modify and enter a new child support order which does not include a redundancy for Sarah's living expenses and which is otherwise just and reasonable.

All concur.

■

6. Under Comment E for Use to Form 14, such direct payments to the institution or to the child can be appropriate and can be considered by the Court as a form of child support. *See also Graf v. Bacon,* 800 S.W.2d 88, 90 (Mo.App.1990) ("It is no valid objection to the child support provisions of a dissolution decree that it may 'require payments by the supporting parent to third parties such as schools, camps, or health care providers' ").

7. We noted above that *Picou,* 789 S.W.2d at 523–24, and *Steger,* 728 S.W.2d at 652, are not directly applicable here. Those cases held that the custodial parent waived her right to child support in full or in part where she relinquished *de*

*facto* custody of the child to the other parent. Here, by contrast, Mrs. Gordon has not relinquished physical custody to her former spouse. Nonetheless, the facts do show that Mrs. Gordon has almost fully relinquished her obligation to *financially* support Sarah to her husband. Of course, as she notes, she does maintain a room for Sarah to stay in when she visits. Presumably she also maintains a place for Philip and Luke to stay on visits, and Mr. Gordon maintains a place for Sarah to stay. Such "overhead" costs would, for the most part, exist regardless of who had custody. They do not preclude a finding of continuing and substantial change in circumstances.