Carolyn G. WINDSOR, Appellant–
Respondent,

v.

David G. WINDSOR, Respondent–
Appellant.

Nos. WD 63512, WD 63661.

Missouri Court of Appeals,
Western District.

July 12, 2005.

■■■■■■■■■

---

Creath S. Thorne, St. Joseph, MO, for appellant-respondent.

Jay D. DeHardt, Kansas City, MO, for respondent-appellant.

Before EDWIN H. SMITH, C.J., and SPINDEN and HOLLIGER, JJ.

EDWIN H. SMITH, Chief Judge.

Carolyn G. Windsor (appellant) and David G. Windsor (respondent) appeal and cross-appeal the judgment of the Circuit Court of Andrew County sustaining, in part, and overruling, in part, the respondent's amended motion to modify his child support obligation for the parties' daughter, Kathryn, a student at the University of Missouri—Kansas City (UMKC). In his amended motion, the respondent sought a reduction in child support, retroactive to the date of filing, based on a loss of income resulting from his retirement, and credit against his child support arrearage for the appellant's failure to comply with the requirements of § 452.340.5[1] to provide information to him concerning Kathryn's grades and course schedule. After a hearing, the trial court sustained the respondent's motion as to the requested arrearage credit, ordering that his child support obligation be abated for a period of two years, from January 1, 2001, to December 31, 2002, for Kathryn and the appellant's failure to comply with § 452.340.5. The court overruled the respondent's amended motion as to the respondent's request to reduce his child support obligation.

In her sole point on appeal, the appellant claims that the trial court "erred in finding that Respondent David Windsor owed no child support from January 2001 through December 2002 because child support was owed under the then-existing order in place in that the requirements of Mo.Rev.Stat. § 452.340.5 were met." In his sole point on cross-appeal, the respondent claims that the trial court erred in denying his motion to reduce his child support obligation, based upon its rebuttal upward of the Form 14 presumed child support amount (PCSA), because the court's rebuttal of the PCSA, as being unjust and inappropriate, was against the weight of the evidence, erroneously applied the law and abused the court's discretion.

We affirm in part, and reverse and remand in part.

## Facts

The parties' marriage was dissolved on May 28, 1996, in the Circuit Court of Andrew County. The appellant was awarded sole legal and primary physical custody[2] of their only child, Kathryn, born on August 16, 1982. The respondent was ordered to pay child support of $1,200 per month. In addition, the court divided the marital property of the parties. The respondent received a valuable coin collection; seventeen automobiles, including three Rolls Royces and four Mercedes Benzes; a 550–

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

**2.** As noted in *LaRocca v. LaRocca,* 135 S.W.3d 522, 524 (Mo.App. E.D.2004), § 452.375.1 defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof," but does not employ the term "primary physical custody."

acre farm in Andrew County, Missouri; and real estate in Winnipeg, Canada.

At the time of the dissolution, the respondent was a practicing psychiatrist. However, on August 7, 1999, he sustained closed head injuries in a rollover automobile accident, which interfered with his ability to continue in his practice. On February 24, 2000, he filed a motion to modify his child support obligation, alleging that he was no longer able to work full time, and that his income was substantially less than at the time of the dissolution.

The respondent retired on March 16, 2000. Several months later, on August 23, 2000, he was incarcerated in a federal correctional facility in Leavenworth, Kansas, for evading taxes during the period of 1993 through 1996. The respondent was released from incarceration on April 17, 2001. On July 8, 2002, the appellant filed a motion for contempt for the respondent's failure to pay child support. The motion alleged that the respondent was then in arrears in the amount of $29,267.

Kathryn graduated from high school in May of 2000, and began her freshman year at UMKC in the fall semester of 2000. The respondent received notice of Kathryn's enrollment for her first semester in college, which was the fall semester of 2000.[3] For the spring semester of 2001, the appellant enclosed a copy of Kathryn's class schedule for that semester with a letter dated February 25, 2001, which was mailed to the correctional facility where the respondent was incarcerated and which he received. The letter, however, did not enclose a transcript of Kathryn's grades for the previous semester, the fall semester of 2000. Instead, the letter stated: "I will send a copy of her grades to you as well." The appellant testified, at trial, that she sent the grades for the fall

semester of 2000 in a separate mailing, but the respondent denied receiving them. The respondent did not receive a copy of Kathryn's college transcript until September 13, 2002, which was after the fall 2002 semester had begun, when the appellant provided a transcript containing Kathryn's grades through the spring 2002 semester.

On September 23, 2002, the respondent filed an amended motion to modify which, in addition to the allegations of his original motion, alleged that the appellant and Kathryn, in violation of § 452.340.5, had "failed to keep the Respondent continuously advised of the minor child's attendance at an institution of higher learning and of the minor child's grades and credits, if any, received from the institution of higher learning." The motion asked the court to credit, against the respondent's child support arrearage, the child support payments which accrued during the time he was not receiving this information: the spring 2001, fall 2001, spring 2002, and fall 2002 semesters.

On June 26, 2003, the respondent's amended motion to modify and the appellant's motion for contempt were taken up and heard. The respondent testified that he did not receive a college transcript from either Kathryn or the appellant until September 13, 2002, when he received the transcript, which contained her grades through the spring 2002 semester. The appellant testified that the first time that a college transcript for Kathryn was provided to the respondent was on September 13, 2002. With respect to the fall semester of 2000, the appellant testified that, on July 31, 2000, she sent the respondent a letter enclosing a copy of Kathryn's acceptance for admission at UMKC and her class schedule for that semester. With

---

**3.** Eligibility for support during the first semester of college may be established simply by proof of enrollment. *Ricklefs v. Ricklefs,* 111 S.W.3d 541, 544 (Mo.App.2003).

respect to the spring semester of 2001, she testified that she sent the letter of February 25, 2001, to the respondent advising him of Kathryn's course schedule.

The appellant testified at length concerning her difficulties in contacting the respondent, which she claimed prevented her from providing him with the necessary information concerning Kathryn's progress at UMKC for the fall 2001, the spring 2002, and the fall 2002 semesters. She testified that, in the spring of 2001, she made another effort to contact the respondent at the correctional facility, but was told that she could not talk with him and could not leave a message because she "was not on the call list." The appellant further testified that, later that spring, she learned from Kathryn that, after the respondent was released from custody on April 17, 2001, he left the country to return to England, where he was born and his family still resided. The appellant testified that she was also told that there was a likelihood that the respondent would be deported and that she was led to believe that it was unlikely that he would return to the United States. The appellant testified that she received no communication from the respondent after he was released from incarceration and while he was out of the country. In the summer of 2002, she learned that the respondent had returned to the country, and so she provided, at the end of that summer, documentation regarding Kathryn's progress at UMKC up to that time.

On October 14, 2003, the trial court entered its judgment modifying its prior decree as to the respondent's child support obligation and denying the appellant's motion for contempt. The court found in the judgment that the respondent had stipulated that he received sufficient notice of Kathryn's college enrollment for the fall 2000 semester so that his child support

obligation continued unabated through December, 2000. However, the court also found that, for the period after the fall 2000 semester, until the beginning of the spring 2003 semester, "[n]either [the appellant] or [Kathryn] complied with requirements of Section 452.340.5, RSMo., and furnished statutorily adequate notice to Respondent of the minor child's grades, credits, hours, continuing eligibility or continuing enrollment." Accordingly, the trial court ordered that the respondent's child support obligation for Kathryn be abated "from the end of the Fall 2000 semester, or January 1, 2001, through and including the end of the Fall 2002 semester, or December, 2002." As to the respondent's motion for a reduction of child support, the trial court found that the PCSA was $473, but that this amount was "unjust and inappropriate" because the respondent had assets that enabled him to pay more in child support. The trial court rebutted the PCSA upward to $1,200, the amount of the existing order. Accordingly, the trial court overruled the respondent's amended motion seeking a reduction in child support.

This appeal followed.

## Standard of Review

■ The standard of review governing the modification of the child support provisions in a dissolution decree is the same as in any other court-tried case. *Ricklefs v. Ricklefs,* 111 S.W.3d 541, 543 (Mo.App. 2003). The judgment of the trial court will be affirmed on appeal "unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* (quoting *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976)).

## I. Mother's Appeal

In her sole point on appeal, the appellant claims that the trial court "erred in finding that Respondent David Windsor owed no child support from January 2001 through December 2002 because child support was owed under the then-existing order in place in that the requirements of Mo.Rev.Stat. § 452.340.5 were met." The appellant's point wholly fails to comply with Rule 84.04(d), governing proper Points Relied On (PRO).

Rule 84.04(d)(1) provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error]."

Thus, the rule requires that a proper PRO must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. *Lombardo v. Lombardo,* 120 S.W.3d 232, 247 (Mo.App.2003). Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. *Franklin v. Ventura,* 32 S.W.3d 801, 803 (Mo.App.2000). The failure to comply with Rule 84.04(d) warrants dismissal of the appeal. *Young v. Ernst,* 113 S.W.3d 695, 697 (Mo.App. 2003).

The appellant's PRO fails to explain in summary fashion why, in the context of this case, the legal reason or reasons support the claim of reversible error. Her point is nothing more than an abstract statement of the law, which is unacceptable in satisfying the requirements of Rule 84.04(d). *Lombardo,* 120 S.W.3d at 247. In essence, all she claims is that the trial court was wrong. The appellant's failure to comply with Rule 84.04(d), in any meaningful manner, is sufficient reason to dismiss the appellant's claim of error. *Young,* 113 S.W.3d at 697.

Strictly speaking, non-compliance with the dictates of Rule 84.04 preserves nothing for appellate review. *Stangeland v. Stangeland,* 33 S.W.3d 696, 703 (Mo.App.2000). However, because appellate courts are more tolerant regarding the requirements of Rule 84.04(d) when the appeal involves the welfare of children, we will review, provided the argument is sufficient in conjunction with the points relied on to allow us to ascertain the issues being raised, without becoming advocates for the appellant, which we are prohibited from doing. *Id.* Because we can determine from reading the argument what the appellant is claiming, we will review her claim, although we would caution counsel in the future to make a better effort to comply with the dictates of Rule 84.04(d).

In its judgment, the trial court ordered that the respondent's child support obligation for Kathryn be abated from January 1, 2001, to December 31, 2002, for

failure to comply with the dictates of § 452.340.5, with the respondent to receive credit against his child support arrearage for the amount of child support abated. In attacking on appeal the trial court's abatement order, the appellant breaks up her argument into three separate attacks, based on three separate time periods of this two-year child support abatement period: "Spring 2001"; "Winter 2001 and Spring 2002 Semesters"; and, "Winter 2002." Her claim as to each is different, requiring us to address each as a separate point. However, before doing so, we first must discuss the requirements of § 452.340.5, the application of which provides the basis for the trial court's order of abatement.

Generally, a child support obligation terminates when the child reaches the age of eighteen. Section 452.340.3; *Ricklefs*, 111 S.W.3d at 544. However, child support will continue up to age 22, provided the child is enrolled in an institution of vocational or higher education and the requirements of § 452.340.5 are met. Section 452.340.5; *Ricklefs*, 111 S.W.3d at 544. Section 452.340.5 provides, in pertinent part:

> If when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of voca-tional or higher institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course. If the circumstances of the child manifestly dictate, the court may waive the October first deadline for enrollment required by this subsection.

Section 452.340.5 contemplates proof of eligibility for continued child support on a semester-by-semester basis. *Ricklefs*, 111 S.W.3d at 544. Eligibility for support for the first semester may be established simply by providing proof of enrollment. *Id.* However, to remain eligible for continued child support, the child must submit to each parent, at the beginning of each semester, a transcript or similar official document, provided by the institution, showing the courses in which the child is enrolled and has completed for each semester and the grades and credits received for each completed course. In addition, the child must submit an official document from the institution listing the courses in which he is enrolled for the upcoming term and the number of credits for each. § 452.340.5. Although the statute speaks in terms of the child providing the requisite information, it has been interpreted to mean that the statutory re-

quirements are satisfied if either the child or the child support obligee provides the mandated information to the child support obligor. *Spencer v. Spencer,* 126 S.W.3d 770, 774 (Mo.App.2004). If the requirements of § 452.340.5 are not satisfied for a given semester, a parent is relieved of his or her child support obligation for that semester. *Ricklefs,* 111 S.W.3d at 544. A failure to comply with the requirements of § 452.340.5 one semester does not, however, relieve a parent of his or her child support obligation for future semesters if the statutory requirements are met for those semesters. *Id.*

### A. Spring 2001 Semester

■ Although the appellant concedes that the respondent was not provided a § 452.340.5 qualifying transcript at the beginning of the spring 2001 semester, she nonetheless claims that the requirements of § 452.340.5 were satisfied in that the respondent was provided a copy of Kathryn's grades from UMKC, which she argues would qualify as a "similar official document," under that section. However, the respondent testified at trial that he never received the grades. Hence, a factual issue was raised as to whether the grades were sent as the appellant testified. Thus, even assuming, *arguendo,* that a copy of Kathryn's grades would be sufficient to satisfy the transcript requirement of the statute, if the trial court believed that the grades were not actually sent, it would have been justified in abating child support for the spring 2001 semester on that basis and in accordance with § 452.340.5.

There is substantial evidence in the record to support a finding by the trial court that the appellant did not send the respondent the required information concerning Kathryn's grades for the fall 2000 semester. At trial, the respondent testified that

he did not receive notice of Kathryn's grades for the fall 2000 semester until two years later, on September 13, 2002. Likewise, the appellant acknowledged that the transcript she provided on September 13, 2002, was the first transcript that she had ever ordered from UMKC. In addition, when the appellant was asked whether, aside from the transcript provided on September 13, 2002, she had been able to find any written records that would establish that she had sent the respondent the required information for the spring 2001, fall 2001, spring 2002, and fall 2002 semesters, she replied, "Not to my knowledge." The trial court was free to believe the evidence that suggested that the appellant never provided the respondent with information concerning Kathryn's grades for the fall 2000 semester and disbelieve the evidence to the contrary. *Malawey v. Malawey,* 137 S.W.3d 518, 522 (Mo.App.2004). Hence, the trial court did not err in ordering that the respondent's child support obligation for the spring 2001 semester be abated for the appellant and Kathryn's failure to provide him with timely notice of her grades and credit hours for the past semester, fall 2000, and the upcoming semester, spring 2001.

### B. Fall 2001 and Spring 2002 Semesters

■ The appellant next claims that the trial court erred in abating child support for the fall 2001 and spring 2002 semesters, on the basis that the requirements of § 452.340.5 were not satisfied, because under the circumstances, any efforts by her to provide the information required by that statute would have been "meaningless, futile, and without effect" due to the respondent's inaccessibility and lack of cooperation. In claiming as she does, the appellant is contending that the trial court erroneously interpreted and applied § 452.340.5. She contends that the legisla-

ture did not intend that the notice requirements of § 452.340.5 would apply where there is a reasonable belief by the child support obligee that any efforts to contact the obligor would be "futile, meaningless, and absurd." The appellant does not cite any authority for her position other than *City of St. Louis v. James Braudis Coal Co.*, 137 S.W.2d 668, 669 (Mo.App.1940), which she cites for the general proposition that:

> since [statutes and ordinances] are presumably passed in the spirit of justice and for the welfare of the community they should be interpreted if possible so as to further that result and to attain that end courts will look less to letter or words of the statute or ordinance and more to the context, subject matter, consequence and effect and the reason and spirit of the law.

Using this general proposition as a guiding star, she contends that the clear intent of § 452.340.5 is to ensure that "non-custodial parents not be excluded from information regarding the progress of their child through institutions of higher education while at the same time being required to support that child." From this, she contends that the intent of § 452.340.5 is not thwarted where, as in her case, no attempt is made to contact the child support obligor to provide the required information because any efforts to contact him would be futile, and he is not paying child support as ordered and has shown no interest in the child's education. In other words, she is claiming no harm, no foul.

With respect to the appellant's contention that we should interpret § 452.340.5 so as to forgive the appellant's admitted failure to make any attempt to comply with its provisions, statutory interpretation is purely a question of law, which we determine *de novo*. *Pavlica v. Dir. of Revenue*, 71 S.W.3d 186, 189 (Mo.App.2002).

When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. banc 1997). If the intent of the legislature is clear and unambiguous, giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. *Baxley v. Jarred*, 91 S.W.3d 192, 196 (Mo.App.2002).

Section 452.340.5 provides, in pertinent part, that: "[t]o remain eligible for ... continued parental support," a child "*shall* submit to each parent a transcript or similar official document" showing the requisite grades and course schedule. (Emphasis added.) As discussed, *supra*, this notice requirement has been interpreted as requiring either the child or the child support obligee to provide the mandated information for continued eligibility for child support. *Spencer*, 126 S.W.3d at 774. There is nothing in the statute that would lead us to believe, as the appellant suggests, that the legislature intended that a child or obligee did not have to make any effort to comply with its requirements based on a subjective belief that any effort to notify him of the required information would be futile. The folly of that suggestion is apparent on its face. At the very least, the legislature intended that a good faith effort be made, as opposed to no effort at all, to comply with the statute's notice provisions. *See IPI Liberty Village Associates v. Spalding Corners Associates*, 751 S.W.2d 120, 124 (Mo.App.1988) (in interpreting § 443.325.3(4) RSMo 1986, as to a required notice being mailed to the last known address of the mortgagor, the court held that the "aim and purpose of the statute is to require a good faith effort

to bring the intended foreclosure sale to the actual notice of the mortgagor").

The record here supports the fact that the appellant had various avenues in which to make a good faith effort to inform the respondent of the information required by § 452.340.5, concerning Kathryn's classes and progress at UMKC. She could have sent the required documentation to his last known address or to his attorney of record. She chose to do nothing, which violates both the spirit and the letter of § 452.340.5. As such, the trial court was justified in abating the respondent's child support obligation for fall 2001 and spring 2002 semesters.

### C.  Fall 2002

The appellant claims that the trial court erred in abating child support for the fall 2002 semester on the basis that the requirements of § 452.340.5 were not satisfied because the information mandated by the statute was provided through the taking of the appellant's deposition on September 13, 2002, and subsequent production of requested documents. We disagree.

As we noted, *supra*, in order to comply with § 452.340.5, Kathryn or the appellant had to provide the respondent, at the beginning of the semester, with official documentation from UMKC showing *both* Kathryn's grades for the previous semester and her class schedule for the upcoming semester. *Ricklefs*, 111 S.W.3d at 544. The deposition was never introduced at trial and is not before us on appeal. But, even assuming that the appellant's deposition could be considered and was as informational as she contends, the disclosures to the respondent she contends were made by her deposition and the subsequent production of documents would not have been timely and would not have constituted official documentation from UMKC so as to

satisfy the requirements of § 452.340.5. We are to affirm the decision of the trial court if it is sustainable on any ground. *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 130 S.W.3d 573, 584 (Mo.App. 2003). Consequently, the trial court did not err in concluding that the respondent's child support obligation was abated for the winter 2002 semester for failure to meet the requirements of § 452.340.5.

Point denied.

### II.  Father's Cross–Appeal

In his sole point on cross-appeal, the respondent claims that the trial court erred in denying his amended motion to reduce his child support obligation, based upon its rebuttal upward of the Form 14 PCSA, because the court's rebuttal of the PCSA, as being unjust and inappropriate, was against the weight of the evidence, erroneously applied the law and abused the court's discretion.

Pursuant to § 452.370.1, a trial court cannot modify a child support order unless it first finds that there has been a change of circumstances so substantial and continuing as to make the terms unreasonable. In that regard, the respondent alleged in his amended motion that there had been a substantial and continuing change of circumstances making the monthly child support order of $1,200 per month unreasonable, in that his health problems had forced him to retire from his profession, so that his income was substantially less than at the time of the dissolution. In overruling the respondent's amended motion to modify child support, the trial court necessarily found that the respondent had failed to carry his burden of showing a substantial and continuing change of circumstances making the terms of the present child support order unreasonable. The respondent contends, *inter alia*, that this was error in that, in accor-

dance with § 452.370.1, the Form 14 PCSA of $473 per month, found by the trial court, represented a change of more than 20% from the existing order of $1,200, such that he made a *prima facie* case for a change in circumstances sufficient to modify child support, which was not rebutted by the appellant.

In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo. App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. *banc* 1997). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. *Ricklefs*, 39 S.W.3d at 870. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court "rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. *Woolridge*, 915 S.W.2d at 381–82. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. *Id.* at 382. In the second step of the *Woolridge* procedure, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. *Ricklefs*, 39 S.W.3d at 870. Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Ricklefs*, 39 S.W.3d at 869; *Woolridge*, 915 S.W.2d at 375. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation. *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo. App.2000).

Here, the trial court accepted the respondent's Form 14, which calculated the PCSA as $473. The respondent's Form 14 reflected that his gross monthly income was $3,401, consisting of Social Security benefits of $1,151 and retirement income of $2,250. The PCSA of $473 constituted a change of $737 from the existing child support order of $1,200, or a percentage change of slightly over 60%. Pursuant to § 452.370.1, a change of 20% or more constitutes a *prima facie* substantial and continuing change of circumstances warranting the modification of a child support order. However, the trial court rebutted this amount as being "unjust and inappropriate," based on "evidence of the substantial assets respondent received at the time the marriage was dissolved and the additional income he has received as a result of the sale of some of these assets along with his ability to sell other assets in order to increase his income." It found that the correct child support amount was the same as the existing amount, $1,200 per month. Thus, the trial court's rebuttal upward of the PCSA, of over 150%, to the same amount as the existing child support amount of $1,200, worked to deny the respondent's amended motion to modify his child support obligation.

To determine the proper amount of child support, the trial court is required

to balance the needs of the child against the obligor's ability to pay. *Malawey*, 137 S.W.3d at 527 (*citing Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo. *banc* 1991)); *see also, Mehra v. Mehra*, 819 S.W.2d 351, 354 (Mo. *banc* 1991). In making this determination, the Legislature mandates in § 452.340.8 that the Missouri Supreme Court establish written guidelines. Those guidelines are found in Civil Procedure Form 14. Pursuant to § 452.340.9 and Rule 88.01(b), "[i]t is presumed that the amount of child support calculated pursuant to Form 14 and accepted by the trial court is the correct amount to be awarded, subject to being rebutted as being 'unjust and inappropriate.'" *Crews v. Crews*, 949 S.W.2d 659, 669 (Mo.App.1997). In other words, the PCSA represents the intersection of the child's presumed financial needs and the parent's presumed ability to pay.

■■■ A child support award is limited to the demonstrable financial needs of the child. *Honderick v. Honderick*, 984 S.W.2d 205, 211 (Mo.App.1999) (*citing Heins v. Heins*, 783 S.W.2d 481, 483 (Mo. App.1990)). Child support is not intended to "provide an accumulation of capital." *Mehra*, 819 S.W.2d at 354 (*citing Heins*, 783 S.W.2d at 483). Hence, the fact that a parent can pay more than the demonstrable financial needs of the child is not, in and of itself, a basis for increasing a child support award, such that a rebuttal of the PCSA on that basis alone would be improper. There would also have to be evidence that the financial needs of the child exceeded the PCSA. *Haden v. Riou*, 37 S.W.3d 854, 864 (Mo.App.2001).

In its judgment, the trial court referred to the sale proceeds of marital property set off to the respondent in the dissolution proceeding as income for purposes of determining child support. We question whether such proceeds would be considered income for purposes of Form 14. *See* Directions, Comments for Use and Examples for Completion of Form No. 14, *Line 1: Gross Income*, defining income. While we found one case, in a footnote, that indicates that a trial court could consider a "substantial increase in assets as a non-Form 14 factor which rebuts the appropriateness or justness of the amount of child support determined under Form 14," *Gordon v. Gordon*, 924 S.W.2d 529, 533 n. 5 (Mo.App.1996), that would speak only to an "increase" in assets not the mere fact of liquidating an asset, as was the case here, to create "income." There is nothing in the record to support a finding by the trial court that there was an increase in the respondent's assets; there is only evidence that some of his assets had been liquidated and that others could be liquidated, which the court referred to as an "ability to increase his income by the sale of other assets." There is also no evidence in the record as to what income, if any, the cash proceeds could generate. And, even assuming somehow that, in liquidating his assets, the respondent created additional income, the question arises as to why the trial court did not include that income in the Form 14 calculation of the PCSA. In any event, the trial court still erred in rebutting the Form 14 PCSA.

■■■ As the party benefiting from the trial court's upward deviation from the PCSA, even if she did not request it, the appellant had the burden to show the need for deviating from the PCSA. *Haden*, 37 S.W.3d at 864. This burden would have included demonstrating that Kathryn's financial needs exceeded the PCSA. *Id.* However, the appellant failed to meet her burden in that there is no evidence in the record of Kathryn's financial needs. There is no evidence of her expenses, the cost of college, or her resources from em-

ployment or elsewhere.[4] Because the record is devoid of any evidence of Kathryn's financial needs over and above the PCSA, the trial court erred in rebutting the PCSA which it found to be $473, the basis on which it denied the respondent's amended motion for modifying his child support obligation.

The fact that the PCSA of $473 found by the trial court was a change of more than 20% from the existing child support order of $1,200 does not mean that the parties' existing support order must be automatically modified. *Gordon*, 924 S.W.2d at 532. It only constitutes a *prima facie* case for modification, which can be rebutted, with evidence demonstrating that there has not been a substantial and continuing change of circumstances rendering the existing order unreasonable. *Id.* at 532–33. Hence, in reversing the trial court's denial of the respondent's amended motion to modify child support, the question still remains for the court on remand, from the evidence already presented, whether there has been a substantial and continuing change of circumstances, requiring modification of the existing child support order. In doing so, however, the trial court is not permitted to reconsider its PCSA determination of $473 or allow the appellant the opportunity to present further evidence to rebut that amount. The appellant had the burden of rebutting the PCSA of $473. She failed in that burden and, as a matter of due process, should not be allowed a second bite of the apple on remand.

### Conclusion

The judgment of the Circuit Court of Andrew County, sustaining, in part, and overruling, in part, the respondent's amended motion to modify child support is affirmed as to its order of abatement of the respondent's child support obligation from January 1, 2001, to December 31, 2002, but reversed as to its order denying a reduction in the respondent's child support obligation, with the case remanded to the court for further proceedings consistent with this opinion.

SPINDEN and HOLLIGER, JJ., concur.

---

4. The appellant includes, as an appendix to her brief, a transcript of a deposition in which she discusses Kathryn's financial resources and the cost of tuition for one semester. However, the deposition was not admitted into evidence at trial, and was not included in the legal file. Depositions which are only attached to a party's brief and not contained in the legal file are not part of the record and will not be considered on appeal. *Porter v. Toys 'R' Us–Delaware, Inc.*, 152 S.W.3d 310, 322 (Mo.App.2004); *Miller v. City of Kansas City*, 121 S.W.3d 313, 318 n. 2 (Mo.App. 2003).