**Jill Suzanne HECKMAN, Respondent,**

v.

**Daniel James HECKMAN, II, Appellant.**

**No. WD 75676.**

Missouri Court of Appeals, Western District.

Oct. 15, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 2013.

Application for Transfer Denied Feb. 4, 2014.

Edwin Smith, Keith Hicklin, Platte City, Jennifer Fain, Platte City, Sharon Kennedy, St. Joseph, for appellant.

Tammy Glick, Platte City, for respondent.

Before Division One: JOSEPH M. ELLIS, P.J., CYNTHIA L. MARTIN, and ANTHONY REX GABBERT, JJ.

ANTHONY REX GABBERT, Judge.

Daniel James Heckman, II (Father) appeals the circuit court's judgment modifying child support. Father raises two points on appeal. First, he argues that the circuit court miscalculated the presumed child support amount (PCSA). Father contends that the court erred in calculating Father's and Jill Suzanne Heckman's (Mother) monthly gross income (MGI) and used the incorrect overnight visitation adjustment percentage. Second, Father argues that even if the court properly calculated the PCSA, it improperly rebutted the PCSA. Father contends that the factors the court used in finding that the PCSA was unjust and inappropriate had already been calculated into Form 14 when arriving at the PCSA. We affirm in part and reverse and remand in part.

In Father and Mother's Judgment and Decree of Dissolution of Marriage, entered June 9, 2008, Mother was awarded $1,713 per month in child support from Father. In a July 29, 2009 modification, the court awarded the parties joint legal and joint physical custody of their three minor children. On September 7, 2010, Father filed a motion to modify the parenting plan and for reimbursement of certain expenses for the children. Mother filed an answer and counter-motion to modify the parenting plan as well as child support. Trial on both motions was held on April 27, April 30, and May 7, 2012. On June 26, 2012, the court entered its Judgment Decree of Modification modifying the existing judgment as to child custody, the parenting plan, and child support.

With regard to the child support modification, the circuit court rejected Father's

proposed Form 14 and both of Mother's proposed Form 14s. The court prepared its own Form 14 worksheet, which was filed of record on the same date as its judgment. In completing its Form 14 the court used the following numbers and calculations:

- In calculating Father's MGI, it appears the court included Father's salary, bonuses, restricted stock, exercise of restricted stock, exercise of stock options, and vacation pay. The court found Father's MGI to be $36,548. This amount appears to have been derived by averaging Father's income for 2010, 2011 and calculating Father's income for 2012 at $549,750.
- For Mother's MGI, the court found it to be $2,579. This was derived from Mother's testimony that she was paid $1,289.27 twice a month.
- The parenting plan adopted by the court awarded Father approximately 171 nights of overnight parenting time per year. The court provided a 10% adjustment for these periods of overnight visitation.

After completing its Form 14 and calculating Father's PCSA to be $3,438, the court rebutted the PCSA as unjust and inappropriate. The court found the reasonable and necessary child support to be paid by Father to Mother to be $4,875. The court based its finding on the statutory factors enumerated in Section 452.340.1, RSMo. (2000). Father appeals the circuit court's child support judgment.

■ We will affirm the circuit court's judgment of child support unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Jeffus v. Jeffus*, 375 S.W.3d 862, 864 (Mo.App. 2012) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

■ Mother concedes some error by the court. In her brief on appeal and at oral argument, Mother concedes inconsistencies in the court's overnight visitation or custody adjustment. Although the court expressed 34% as the correct percentage for the overnight visitation or custody adjustment, the court inaccurately used 10% in its Form 14. Father argues, however, that neither 34% nor 10% is the correct percentage. He contends that 47% should have been used because that accurately reflects the percentage of days in the year that he has overnight visitation or custody of the children. Father's argument, however, misstates the law regarding the proper percentage to be used for the adjustment. The adjustment percentage on Line 11 of Form 14 is not directly equal to the percentage of the year that the parent, who is obligated to pay support, is awarded periods of overnight visitation or custody. See Form 14, Line 11, Direction. For example, if a parent obligated to pay support has periods of overnight visitation or custody approximately 25% of the year, the proper adjustment percentage on Form 14 is 10% not 25%. *Id.* Furthermore, when the period of overnight visitation or custody is greater than 109 days per year, like is the case here, the adjustment for that parent may be greater than 10% up to a maximum of 50%. Thus, when the period of overnight visitation or custody is greater than 109 days per year, the court has discretion in awarding the adjustment percentage as long as it is not greater than 50%. Here, the court expressed 34% in its judgment but used 10% in its Form 14. Additionally, Mother concedes that it would not have been an abuse of the court's discretion if the court had used 34%.[1] As a result, we accept the

---

1. We note that in Father's Form 14 that was provided to the court before it completed its own Form 14 he used 10% for his adjustment percentage, inviting the court's error.

court's finding of 34% and find that the court erred when it used 10% as the adjustment percentage in completing its Form 14.

■ This, however, is not the only error that Mother concedes. At oral argument, Mother conceded error in the court's calculation of Mother's gross income, calculation of the percentage of child support Mother was responsible for, and the court's use of Form 14 calculation factors for rebutting the presumed child support amount.[2] We reverse and remand for a determination of appropriate child support consistent with the Mother's concessions.

As Mother conceded part of Father's first point and Father's second point, the only issue remaining for this court to determine, prior to remand, is Father's contention in his first point that the court erred in calculating the PCSA pursuant to its Form 14 because it miscalculated Father's gross monthly income by including as income "restricted stock," "exercise of restricted stock," "exercise of stock options," and a single "above and beyond" payment.[3] Mother contends that any error by the court in this regard is insignificant.

In calculating Father's MGI of $36,548, the court included what Father terms his restricted stock, exercise of restricted stock, exercise of stock options, and an "Above and Beyond" bonus. Father argues that these items should not have been included in calculating his monthly gross income. Mother argues that it is immate-

rial that the court included these items in its calculations because they do not change the basic child support amount of $3,500. We disagree with Mother. While the amount of monthly gross income attributed to the parties does not affect the basic child support amount, inclusion of these items in Father's income is material because Father's MGI has an impact on the proportionate share of combined adjusted MGI. *Cohen v. Cohen,* 178 S.W.3d 656, 677 (Mo.App.2005). This proportionate share is used to calculate each parent's support obligation. *See id.*

■ When determining the correct amount of child support, the court can either accept or reject the parties' Form 14 calculations. *Woolridge v. Woolridge,* 915 S.W.2d 372, 381–82 (Mo.App.1996). If the court rejects the parties' Form 14 calculations, it must do its own Form 14 calculations. *Id.* In doing its own calculations, the court can either complete its own Form 14 and include it in the record or it can articulate on the record how it calculated its Form 14. *Id.* We review a circuit court's Form 14 calculation "to ensure the calculation was done accurately from a mathematical standpoint and that the various items and their amounts were included in the calculation and supported by substantial evidence." *Lagermann v. Lagermann,* 109 S.W.3d 239, 245 (Mo.App.2003).

■ For purposes of computing PCSA, "income" includes "a financial benefit or money received by a parent that could

---

**2.** Form 14 requires the use of gross income. Therefore, Mother's MGI should have been $3,136 at the time the court calculated its Form 14. Use of Mother's gross income, rather than Mother's taxable income of $2,579, necessarily alters Mother's child support obligation. Additionally, the extraordinary child-rearing costs used by the court to calculate the PCSA should not have also been used to rebut the PCSA as unjust and inap-

propriate. *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996).

**3.** Father concedes that his own Form 14 that Father presented to the court was incorrect and should have been rejected by the court. Father admits that he neglected to include Father's vacation pay as income in his Form 14 calculations and used 10% as the overnight visitation or custody adjustment percentage.

have a positive impact on the parent's ability to support the parent's children." Form 14, Line 1, Comment A. Among the income recognized in Form 14 as "gross income" are dividends, capital gains, annuities and pension and retirement benefits. *Gordon v. Gordon,* 924 S.W.2d 529, 533 (Mo.App.1996). This list, however, is not exclusive. *See Fulton v. Adams,* 924 S.W.2d 548, 554 (Mo.App.1996) (holding that pre-tax "flex plan benefits" were appropriately considered as income in making Form 14 calculations); *Farr v. Cloninger,* 937 S.W.2d 760, 764 (Mo.App.1997) (holding employer's contribution to Father's retirement plan should not be included as income); *Roberts v. Roberts,* 847 S.W.2d 108, 109 (Mo.App.1992) (holding that a court may include an employer's contributions to a retirement plan in calculating PCSA where the employer was wholly owned by the parent and its sole employee was the parent); *Graves v. Graves,* 967 S.W.2d 632, 641 (Mo.App.1998) (holding that rent paid from husband's company to wife was to be included in the wife's gross income in determining child support).

■ First, Father argues that his restricted stock should not have been included in his gross income because the restricted stock merely represents the value of stock holdings. Father argues that *Gordon,* which held that a parent's gross income does not include the increased value of stock held by a parent, supports that the court erred in including Father's restricted stock in his MGI. *Gordon,* 924 S.W.2d at 533. This case is distinguishable from *Gordon.* In *Gordon,* the court found that Mother's increased stock value would constitute a capital gain if she were to liquidate the stock, but that the increased value, without liquation, is not a capital gain that should be included in Mother's gross income. Here, the court did not include increased stock values in Father's income. Rather, the court included in Father's gross income the value of new stocks issued to him by his company as part of his annual compensation package. While Father argues, in essence, that this stock is a pre-owned asset, Father's pay stubs in Exhibit RR itemize this stock as a yearly "earning." Therefore, the court could have reasonably concluded that the sums indicated on Father's pay stubs as "Rest. Stk." represent stock that Father received by the company as part of his annual compensation. Therefore, the court did not err in calculating Father's gross income by including his restricted stock as part of his MGI. However, it is necessary to recognize that in some cases, the rate at which the stock vests may influence income calculations.

■ Here, the court was supplied with Father's salary information from 2008 to 2012. In each of those years, Father earned restricted stock. Father testified that the restricted stock vests over a four-year period. On appeal, Father explains that after the first year of receiving the stock, Father can only exercise one-fourth of its value. After the second year, Father can exercise one-half of its value. It fully vests after the fourth year. Father argues that because the total value of all of this stock is not accessible to Father, it was error for the court to include the total sums as income. On the facts of this case, we disagree.

■ Here, the record reflects that Father has been employed by the same employer for 25 years. In arriving at Father's income, the court averaged Father's restricted stock earnings, and other earnings, for the years 2010 to 2012. Father earned restricted stock in the amount of $31,278 in 2010, $47,132 in 2011, and $57,576 in 2012. These figures represent a steady increase in Father's restricted stock earnings. It is apparent from Father's Exhibit RR that Father earns re-

stricted stock yearly. Therefore, although all of the stock from 2010 to 2012 has not fully vested, at least a portion of the stock has vested and may be considered in determining child support. *See also Wofford v. Wofford,* 991 S.W.2d 194, 198 (Mo.App. 1999) (finding that if employee can currently withdraw and sell stock given to him as part of an employer compensation plan than such stock would relate to the employee's present ability to pay child support). Furthermore, it was reasonable for the court to assume that over course of Father's 25 years of employment, all restricted stock Father received prior to 2009 has vested. A court may properly consider past, present and anticipated earning capacity in determining child support. *Price v. Price,* 921 S.W.2d 668, 673 (Mo.App.1996). Thus, the court's average of Father's earned restricted stock from the past three years represents consideration of Father's past, present and anticipated earning capacity with regard to his restricted stock. While the value of stock that actually vested from 2010 to 2012 may not be the same as the value of restricted stock Father received from 2010 to 2012, we find, on the facts of this case, that averaging the values of the restricted stock Father received from 2010 to 2012 was a reasonable method for considering past, present and anticipated restricted stock earnings. Therefore, the court did not err by including Father's restricted stock earnings in Father's gross income or in the method by which the court included those earnings.

 Second, Father argues that his "exercise of restricted stock" should not have been included as income because these amounts represent a sale of vested restricted stock. Father argues that because Mother failed to present evidence of Father's basis in the exercised restricted stock such that "income" could be proven through a net gain or loss, it was error for the court to include this as income. While a court will not look to see if the value of stock has increased so as to include this increase in a parent's gross income after stocks have been issued, other aspects regarding the stock may still be considered in determining gross income. *See Gordon,* 924 S.W.2d at 533. For example, if the stock produces dividends, retained earnings, or a capital gain from sale of the stock, these earnings are included in a calculation of gross income. *Id.*

While Father is accurate that only the gain from the sale of stock assets should be included as income, the record suggests that what Father terms "exercise of restricted stock" actually represents dividends from Father's restricted stock. Father's Exhibit RR includes Father's pay stubs. These pay stubs include a category of income labeled "Rst. St. Div." This label suggests that this category represents Restricted Stock Dividends. Father, however, labels this category "exercise of restricted stock" and argues on appeal that this category represents the sale of vested restricted stock. The record suggests otherwise and the circuit court could have reasonably concluded based on Father's exhibits that all sums under "Rst. St. Div." represented dividends and were, therefore, includable in Father's gross income. Father recognizes in his brief on appeal that Comment A to Line 1 of Form 14 expressly allows for dividends to be included as income. The court did not err by including what Father terms "exercise of restricted stock" as income.

 Third, Father argues that his "exercise of stock options" should not have been included in his gross income, suggesting that he merely purchased company stock, the value of which should not be considered income. However, based on the pay stubs provided in Exhibit RR by Father, the record reflects that these stocks were not purchased with external

funds, as Father may be suggesting, but were purchased with funds that would have otherwise been received as compensation. Father's pay stubs list "Stock Opt." under the category of "Earnings." Therefore, the court could have reasonably concluded that Father opted to purchase company stock in lieu of direct compensation, or the stock options were a benefit provided by his company in lieu of direct compensation. Therefore, the court did not err by including what Father terms his "exercise of stock options" as income.

■ Finally, with regard to Father's "Above and Beyond" bonus, Father argues that this one-time payment in 2011 should not have been included in his gross income because the $802.17 bonus was the only "Above and Beyond" bonus he had received since 2008. We agree. When determining whether to include a bonus in a parent's gross income, Comment D to Line 1 is informative. The Comment states that a court should consider "the realistic expectation that the parent will continue to receive" this bonus in the future. We find nothing in the record to support a realistic expectation that Father will continue to receive this bonus. Therefore, the court erred in calculating Father's gross income by including Father's 2011 "Above and Beyond" bonus. Father's first point on appeal is granted in part and denied in part.

Additionally, Mother filed a motion for attorney fees and costs, pursuant to Section 452.355 and Rule XXIX of the Western District Court of Appeals Special Rules, that was taken with this case. Because we reverse and remand for a determination of appropriate child support consistent with Mother's concessions and this opinion, we remand this motion with the case for the trial court to determine whether an award of attorney's fees and costs incurred on appeal is appropriate, and if so, in what amount.

We conclude, therefore, that the court did not err by including as income Father's "restricted stock," Father's "exercise of restricted stock," and Father's "exercise of stock options." We find that the court did err by including Father's one-time "Above and Beyond" bonus when calculating Father's gross income. Further, as conceded by the parties, the court erred in calculating Mother's gross income, erred in using 10% for the overnight visitation or custody adjustment percentage when it should have used 34% as reflected in its judgment, and erred in using extraordinary child-rearing costs to rebut the PCSA as unjust and inappropriate. We reverse the circuit court's judgment and remand for an appropriate child support determination in accordance with this opinion, and to determine whether an award of attorney's fees and costs incurred on appeal is appropriate, and if so, in what amount.

All concur.