

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| PAULA J. SEVERN, | ) | |
| | ) | |
| Respondent, | ) | WD81242 |
| | ) | |
| v. | ) | OPINION FILED: January 8, 2019 |
| | ) | |
| WILLIAM T. SEVERN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable David L. Bolander, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Cynthia L. Martin, Judge and
Anthony Rex Gabbert, Judge

William Severn ("William")[1] appeals the judgment from the Circuit Court of

Buchanan County, Missouri denying in part his Motion to Modify Judgment of Dissolution

of Marriage as to Child Support and Spousal Maintenance. William argues that the motion

court erred in denying his motion because there were substantial or continuing changes of

circumstances to warrant termination or modification of maintenance, Paula Severn

("Paula") could meet her reasonable needs, William's employer's contributions to his 409A

---

[1] Because William Severn and Paula Severn share the same surname, we refer to each by their first name
for purposes of clarity. No familiarity or disrespect is intended.

deferred compensation plan should not have been included in his gross income for purposes of child support calculations, and Paula's income was understated for purposes of child support calculations. William further argues that the motion court erred in awarding Paula half of her attorney fees and awarding Paula more than half of the combined disposable income. We affirm in part and reverse and remand in part.

## Statement of Facts

William and Paula were married on September 7, 1991, in Shawnee County, KS. On February 27, 2008, the trial court entered a Judgment Entry for Dissolution of Marriage, dissolving William and Paula's marriage. The parties settled all issues in the dissolution and the trial court approved their agreement.

The parties agreed that William would pay Paula modifiable maintenance in the sum of $1,500.00 per month. In the Form 14 submitted by agreement of the parties in the dissolution, Paula's gross monthly income was $2,083.00 per month plus the $1,500.00 per month in maintenance and William's gross monthly income was $16,333.00 per month before the reduction for his maintenance obligation. The parties were awarded joint legal and physical custody of their three minor children and the parties agreed that William would be ordered to pay child support to Paula in the amount of $1,893.00 per month.

During the marriage for the ten years prior to the dissolution, Paula was not employed outside the home and was a stay-at-home mother to the parties' children. Approximately one month prior to the dissolution Paula obtained employment at a salon as a hairdresser and her income from that employment was used to determine child support and maintenance.

2

On September 29, 2016, William filed a Motion to Modify Judgment of Dissolution of Marriage as to Child Support and Spousal Maintenance seeking to terminate his maintenance obligation to Paula, to declare the emancipation of the parties' eldest child, to reduce his child support obligation, and to make the child support payable directly to the parties' youngest two children. A hearing was held on August 29, 2017. At the hearing the parties stipulated that two of the children were now over the age of 18 and were emancipated. The youngest child was still subject to child support. There is no dispute among the parties that the emancipation of two of the children supported a modification of the child support obligation.

The motion court entered a Judgment for Modification on October 3, 2017. The court rejected both parties' Form 14 child support calculations and prepared its own Form 14. The court found Paula's average monthly income to be in the amount of $3,637.00 per month and William's average monthly income to be in the amount of $20,662.00 per month.[2] The motion court found the presumed child support amount to be in the sum of $1,508.00 per month and that this amount was not unjust or inappropriate and awarded child support in that amount for the remaining unemancipated minor child.

The evidence at trial adduced that Paula continued to work at the same hair salon where she began working shortly before the dissolution. Her income had gradually increased over time as she obtained new customers and grew her clientele. At the time of trial she was working less than 40 hours per week and had gross earnings of $43,644.00

[2] The manner in which the motion court calculated the gross income for each party is the major source of the dispute between the parties in this appeal and is discussed in greater detail below.

3

per year or $3,637.00 per month. William alleged at trial and on appeal that Paula should be working at least 40 hours per week and based on his calculations, gross income should be imputed to her in the amount of $6,100.00 per month for both child support and maintenance determinations. The motion court found that Paula's income had gradually increased following the dissolution because of her increase in clients over time but that this increase was foreseeable at the time of the dissolution. The court also found that there was no evidence to establish that she would have sufficient customers to earn additional income no matter how many hours she spent in the salon. The court found that she was earning a reasonable income based on her profession as a hairdresser and based on her education and experience. The court found that she was not underemployed and that her gradual increase in income over the years since the dissolution did not constitute a substantial and continuing change in circumstances to justify a termination or modification of maintenance.

The court found that Paula had overstated her expenses by including amounts expended on the children in her own expenses. However, the court found that based on her reasonable needs she was still in need of maintenance and that the change in the amount of her reasonable expenses did not constitute a substantial and continuing change in circumstances so as to justify the termination of or a modification of the prior maintenance award.

At the time of trial, William was employed by a management company and his base salary was in the amount of $195,190.00 per year. William also received bonus income in the following years in the following amounts: 2014 = $9,000.00, 2015 = $32,000.00, and

4

2016 = $32,000.00. William also received dividend income in the following years in the following amounts: 2014 = $18,828.00, 2015 = $15,757.00 and 2016 = $14,175.00. The motion court found that while the bonus and dividend amounts have varied from year to year, based on the evidence, it was reasonable to include the average amount received from each over the last three years and divide by twelve in determining William's gross monthly income. The court found the average monthly income to be $2,028.00 per month from bonuses and $1,355.00 per month from dividends.

William's employer also had a deferred compensation plan which the employer contributed to over the years but solely at its option. The motion court found that if these funds were not contributed into the deferred compensation plan that William would not receive these amounts but also found that because they were put into a deferred compensation plan they were not currently available to William. While the court found these funds were not available to William at this time because of the restrictions on when he could withdraw these funds from his deferred compensation account, the amounts contributed constituted a significant employment related benefit for purposes of determining William's gross income pursuant to Form 14 Line 1 comments for use.[3] Based on the evidence the court found that it was appropriate to include one half of the average payment William's employer contributed to his deferred compensation plan over the last three years for purposes of determining his gross income for child support purposes and

---

[3] William's deferred compensation fund had a value of over $800,000 at the time of trial. William also had an investment account valued at over one million dollars at the time of trial. The court's Judgment failed to include any income from this investment account in calculating his income. The lack of income from this investment account is not an issue that has been raised on appeal.

5

his ability to pay maintenance. One half of the average amount contributed over the preceding three years constituted $12,167.00 per year or $1,013.00 per month.

William's ability to pay the maintenance award is not in dispute. The motion court found that William failed to establish a substantial and continuing change in circumstances sufficient to justify a modification or termination of the prior maintenance award and left the prior maintenance award of $1,500.00 per month in effect. The motion court used this amount in its Form 14 child support calculation.

The motion court further found that due "to the disparity of the income and the unsupported claim for the termination of maintenance, it is reasonable and necessary that [William] pay [Paula] one-half of her attorney's fees and expert witness fees in the amount of $5,585.00." This timely appeal followed.

**Analysis**

William raises six points on appeal. In Point One, William argues that the motion court erred in concluding there was no substantial or continuing change in circumstances to warrant termination or modification of maintenance because the weight of the evidence demonstrated that there was such a change in circumstances. In Point Two, William argues that the motion court erred in concluding Paula could not meet her reasonable living expenses because the weight of the evidence demonstrated that she had overstated her expenses. In his third point on appeal, William argues that the motion court erred in calculating child support because the motion court overstated his income by including his employer's contributions to his deferred compensation plan. In his fourth point on appeal, William argues that the motion court erred in calculating child support since it understated

6

Paula's income by failing to impute to her full-time employment income. In his fifth point on appeal, William argues that the motion court erred in awarding Paula half of her attorney's and expert witness fees because the weight of the evidence showed that she had more than sufficient cash assets to pay the fees. In Point Six, William argues that the motion court erred by awarding Paula more than half of the combined disposable net income of the parties because it is against public policy and fundamental fairness.

## Analysis of Points One and Two

### Standard of Review

Both Points One and Two argue that the judgment was against the weight of the evidence.

> Upon review, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Markowski v. Markowski*, 736 S.W.2d 463, 465 (Mo. App. W.D. 1987) (internal citation omitted). We give deference to the trial court's judgment on the credibility of witnesses and the weight given to opposing opinion evidence. *Id.* at 465.

*Almuttar v. Almuttar*, 479 S.W.3d 135, 138 (Mo. App. W.D. 2016).

"[T]he trial court's judgment is presumed valid. . . ." *Adams v. Adams*, 51 S.W.3d 541, 546 (Mo. App. W.D. 2001). We defer to the trial court's findings of fact on contested factual issues and defer to the trial court's credibility determination when determining whether a trial court's judgment is against the weight of the evidence. *Hughes v. Hughes*, 505 S.W.3d 458, 467 (Mo. App. E.D. 2016). "A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the evidence at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* In order to succeed

on an against the weight of the evidence challenge we must be firmly convinced that the

judgment is wrong. *Id.*

An against-the-weight-of-the-evidence challenge presupposes the existence of substantial evidence to support the outcome--that is, the argument presumes there was some evidence with "probative force on each fact necessary to sustain" it. *Holm v. Wells Fargo Home Mortgage, Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017). In an against-the-weight-of-the-evidence challenge, we may consider a narrow category of evidence contrary to the judgment: evidence, where the effect "is legal, and there is no finding of fact to which [we] defer." *White*, 321 S.W.3d at 308. In other words, evidence of such a nature that the only "question before the appellate court is whether the trial court drew the proper legal conclusions" therefrom. *Id.*

The significant burdens an appellant faces in bringing an against-the-weight-of-the-evidence challenge are well expressed in our Supreme Court's opinion in *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014):

Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact. See *White v. Dir. of Revenue*, 321 S.W.3d 298, 309 (Mo. banc 2010) (stating that 'weight' denotes probative value, not the quantity of the evidence). The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong.

When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.

8

This Court defers on credibility determinations when reviewing an against-the-weight-of-the-evidence challenge because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case. The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other trial intangibles that the record may not completely reveal. Accordingly, this standard of review takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective. This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached. Rule 73.01(c). Evidence not based on a credibility determination, contrary to the circuit court's judgment, can be considered in an appellate court's review of an against-the-weight-of-the-evidence challenge.

*Id.* (internal quotations and citations omitted).

These principles are reflected in the four-step analytical sequence for against-the-weight-of-the-evidence challenges set forth in *Houston*, 317 S.W.3d at 187, directing that such a challenge:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*In re Marriage of Schubert v. Schubert,* No. SD34911, 2018 WL 1443883, *5-6 (Mo. App.

S.D. March 23, 2018).

9

**Analysis Point One**

In William's first point on appeal he argues that the motion court erred in concluding that there was no substantial or continuing change of circumstance to warrant termination or modification of maintenance since the weight of the evidence established that there had been substantial and continuing changes in circumstances. William argues that the substantial and continuing changes in circumstances include Paula's increased income, Paula's failure to actively and continuously make good faith efforts to become self-sufficient, Paula's accumulation of assets through maintenance, Paula's spending habits, and the children's emancipation or moving from Paula's residence.

William's brief wholly fails to even attempt to apply the four-step analytical sequence for an against-the-weight-of-the-evidence challenge set forth in *Schubert* to the facts of this case. Instead, William presents the evidence in the light most favorable to his position and ignores the motion court's factual and credibility findings and argues his evidence was more credible and therefore the judgment should be reversed. Despite these deficiencies which would justify us summarily rejecting these points, we exercise our discretion to analyze the legal issues presented.

"The provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1.[4] "This statutory standard for modification is designed to be strict so as to discourage recurrent and insubstantial motions

---

[4] All statutory references are to RSMo 2016 as supplemented unless otherwise indicated.

10

for modification." *Laffey v. Laffey*, 72 S.W.3d 143, 147 (Mo. App. W.D. 2002). "The party moving for modification of maintenance bears the burden of proving substantial and continuing change." *Id.* "A change in circumstances rises to the requisite statutory level when it renders the obligor spouse unable to pay maintenance at the assigned rate or when the recipient of the support could meet his or her reasonable needs with a lesser amount of maintenance." *Id.* at 147-48. "Changed circumstances sufficient to support modification of maintenance must be proven by detailed evidence." *Winchester v. Winchester*, 163 S.W.3d 57, 60 (Mo. App. S.D. 2005). "In a modification proceeding, the concept of 'change' necessarily entails a departure from a known prior state or condition." *Fulp v. Fulp*, 808 S.W.2d 421, 423 (Mo. App. W.D. 1991).

William first argues that there was a substantial and continuing change in circumstances because Paula's income increased by 75% since the dissolution. William further argues that the increase in income is sufficient for Paula to meet her reasonable needs.

"While a decrease in the income of the spouse paying maintenance or an increase in the income of the spouse receiving maintenance are both relevant factors for the court to consider, neither alone requires the court to modify the amount of maintenance previously ordered." *Laffey*, 72 S.W.3d at 148. "The ultimate issue remains whether these changes are sufficiently substantial and continuing so as to make the original terms of the decree unreasonable." *Id.* "The court must also consider whether there has been an increase in expenses, and other factors, in making its ultimate decision as to whether the spouse still

11

needs financial assistance to meet her reasonable needs." *Sprouse v. Sprouse*, 969 S.W.2d 836, 839 (Mo. App. W.D. 1998).

The motion court found Paula's income to be $43,644.00 per year, which equates to $3,637.00 per month. The court found that she was earning a reasonable income based on her profession as a hairdresser and based on her education and experience. The court found that she was not underemployed and that her gradual increase in income over the almost ten years since the dissolution was foreseeable and did not constitute a substantial and continuing change in circumstances so as to justify a termination or modification of maintenance. The motion court found Paula's claimed expenses to be overestimated due to the inclusion of the expenses properly attributed to her children but otherwise did not find her expenses unreasonable. Even after the motion court deducted the expenses that it found to be improper from Paula's claimed expenses, the court still found that Paula's reasonable needs exceeded her reasonable income and that she remained in need of maintenance. The findings are supported by the credible evidence at trial.

Paula's increase in income under these facts does not constitute a substantial change in circumstances. *See Greenberg v. Greenberg*, 454 S.W.3d 390, 394 (Mo. App. E.D. 2015) ("Where the obligee spouse's income increased, but she still cannot meet her needs, a change in circumstances making the original award unreasonable has not occurred.").

William next argues that a substantial and continuing change in circumstances occurred when Paula failed to actively and continuously make good faith efforts to work full time and become self-sufficient. William argues that Paula has chosen to not to work full-time or seek additional education in order to obtain skills for a different career.

12

"A court should consider the obligation of a spouse to contribute to his or her own support." *Evans v. Evans*, 45 S.W.3d 523, 530 (Mo. App. W.D. 2001). "It is the duty of a spouse receiving maintenance to expend a good faith effort within a reasonable time to obtain employment." *Id.* "Passive acceptance of support over an extended period of time without significant efforts to become self-supporting may constitute a change of circumstances justifying modification of maintenance." *Eaton v. Bell*, 127 S.W.3d 690, 696 (Mo. App. W.D. 2004).

Paula was not employed during the majority of the marriage but, by agreement of both parties, stayed home to care for their children. After the parties separated, Paula began working as a hairdresser at a salon. At the time of the dissolution Paula's gross income was $2,083.00 per month. At the time of trial in this action her gross income had increased to $3,637.00 per month. Paula has consistently maintained employment since the time of dissolution. The court found that she was earning a reasonable income based on her profession as a hairdresser and based on her education and experience. The court found that she was not underemployed and that her gradual increase in income over the years since the dissolution did not constitute a substantial and continuing change in circumstances to justify a termination or modification of maintenance.

William argues that Paula only works 29 hours a week, while Paula claims she works at least 35 hours a week. William's calculation of Paula's work hours is based solely on her appointment book and the time she was actually performing cosmetology services for a client. The court found, due to the fact that Paula's hours as a hairdresser are based solely on the number of her clients, there is no guarantee she would have clients

13

continuously for 40 hours per week even if she never left the salon. Both parties acknowledge that Paula's income has increased since the time of dissolution. However, the court found that "[w]ithout the maintenance payment, Petitioner's standard of living would decrease significantly from what it was during the marriage." The court found that although, Paula has made good faith efforts to become self-sufficient, she remains unable to meet her reasonable needs with her own income. The court found the evidence insufficient to support the imputation of income to Paula based upon her working 40 hours per week. The court found based upon her current income and reasonable needs she remained in need of maintenance. William failed to establish a substantial and continuing change in circumstances on this basis under these facts. *See Eaton,* 127 S.W.3d at 696-97. Further, William failed to show on appeal how the findings of the motion court were against the weight of the evidence.

William next argues that Paula has accumulated assets through the receipt of her maintenance payments which constitutes a substantial and continuing change of circumstances. William argues that in the past nine and half years following the dissolution judgment, Paula's net cash assets increased by $67,421.

Once again on this subpoint, William's brief fails to even attempt to apply the four-step analytical sequence for an against-the-weight-of-the-evidence challenge set forth in *Schubert* to the facts of this case. Again we would be justified in rejecting this argument on that basis alone.

In support of this argument, William cites to *Cohen v. Cohen*, for the proposition that "any investment income from the property awarded is to be considered in determining

14

whether the spouse has sufficient property to provide for his or her reasonable needs because a spouse is not entitled to build an estate or accumulate capital through maintenance." 73 S.W.3d 39, 47 (Mo. App. W.D. 2002). This holding is completely inapplicable to the facts of this case. William fails to point to any income producing property owned by Paula, the income from which she should be using to meet her reasonable needs. This Court in *Cohen* was assessing whether the court below erred in calculating maintenance by not including income from retirement and IRA accounts apportioned as marital property, which is distinct from, and irrelevant to, William's argument before this Court. William does not argue that the value of the marital assets such as her home should be included in the calculation of Paula's income. Rather William attempts to simply add up the value of the assets awarded to her in the dissolution and compare that to what he claims is the total value of the assets she currently owns, to support an argument that she has used her maintenance payments to improperly increase her assets and this therefore constitutes a substantial and continual change in circumstances.[5] William cites to no other authority to support his argument on this subpoint. "Failure to cite relevant authority supporting a point or to explain the failure to do so preserves nothing for review." *Mansfield v. Horner*, 443 S.W.3d 627, 642 (Mo. App. W.D. 2014) (quoting

___

[5] We note that a portion of each mortgage payment on a home loan is attributable to paying the principal of the debt, so over the course of ten years the equity in Paula's home would increase as the debt is paid down. However, mortgage payments have long been considered a reasonable expense in the calculation of maintenance and the increase in the equity in the home based on normal mortgage payments has never been found to constitute the improper accumulation of assets based on the maintenance payment. *See In re Marriage of Neu,* 167 S.W.3d 791, 796 (Mo. App. E.D. 2005).

15

*Goudeaux v. Bd. Of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 516 (Mo. App. W.D. 2013)).

William next argues that there was a substantial and continuing change in circumstances because Paula's spending habits are the reason her current expenses exceed her income. William argues that if Paula would have made different decisions regarding the purchase of her new home and the remodeling expenses, she would have been able to afford to meet her reasonable needs without the need for maintenance. A fair reading of William's brief suggests that he believes if Paula would spend and invest her money more wisely and if she would follow William's advice on these issues she may not need maintenance. William's ability to advise Paula on how to handle her finances ceased when the dissolution of their marriage was finalized.

William cites to no authority for his argument on this subpoint. Again, "[f]ailure to cite relevant authority supporting a point or to explain the failure to do so preserves nothing for review." *Id*. William failed to preserve this argument.

Finally under Point One, William argues that there was a substantial and continuing change in circumstances because all three of the party's children were either emancipated or no longer residing with Paula. William argues that since the eldest two children have been emancipated and the only dependent child has established her own household, this is a substantial and continuing change of circumstances in the determination of maintenance.

> "Since a court may properly consider the fact that a spouse was granted custody of minor children as a circumstance going to the propriety of a maintenance award, *Goff v. Goff*, 557 S.W.2d 55, 57(3) (Mo. App. 1977), we believe that it is also proper to consider emancipation of such children as a factor along with other factors to consider relative to a termination."

16

*Hebron v. Hebron*, 566 S.W.2d 829, 835 (Mo. App. E.D. 1978). "The reason for this is that upon emancipation of minor children the spouse with custody is also 'emancipated', that is, he or she is free to devote time to a job outside the home once child-rearing responsibilities have ceased." *Id. See In re Marriage of Hammerschmidt*, 48 S.W.3d 614, 620 (Mo. App. E.D. 2001) ("A court may take into consideration the fact that wife no longer has minor children at home and that, as a result, the court's original reason for not requiring wife to seek full-time paid employment outside the home no longer exists.").

While William cites generally to authority that the emancipation of children "may" be considered in determining if a substantial and continuing change in circumstances has occurred, he fails to even attempt to apply this general statement of law to the facts of this case. His entire argument under this subpoint is less than one page in his brief and wholly insufficient to support his argument let alone attempt to apply the *Schubert* factors to the facts of this case.

Paula has been working since the time of dissolution as a hairdresser and her income has increased over that time period. The children's emancipation or the minor children's moving out of Paula's residence will not likely alter Paula's earning ability from her occupation. Therefore, the children's emancipation or moving out of Paula's residence does not constitute a substantial or continual change of circumstances under the facts of this case.

We do not find that the motion court abused its discretion in determining that William failed to establish a substantial or continuing change in circumstances justifying the reduction or termination of maintenance. Point One is denied.

**Analysis of Point Two**

In his second point on appeal, William argues that the motion court erred in not reducing or terminating maintenance because Paula is able to meet her reasonable living expenses since the weight of the evidence demonstrated that her expenses were drastically overstated. William argues that Paula's expenses were overstated because she included expenses relating to the dependent child in her own expenses and she included expenses for the extra lines on her cell phone plan she shares with the children. William further argues that all of Paula's other expenses were overestimated.

Once again William completely failed to even attempt to apply the *Schubert* factors to his arguments.

In its judgment, the motion court acknowledged that Paula's expenses were overstated due to the inclusion of the expenses for the children. However, the trial court found that, after eliminating these items, her expenses were not unreasonable and any change in her expenses did not rise to the level of a substantial change in circumstances.

This court agrees that the expenses related to the children, which were included in Paula's claims for her reasonable expenses should not have been considered in determining her reasonable needs. "Maintenance is for the needs of the obligee spouse." *McKown v. McKown*, 280 S.W.3d 169, 175 (Mo. App. W.D. 2009). "[S]pousal maintenance and child support are two distinctly separate concepts, and the former does not include the latter."

18

*Nichols v. Nichols*, 14 S.W.3d 630, 637 (Mo. App. E.D. 2000). Further, "in assessing the need for maintenance, 'the trial court is not to consider any amounts expended for the direct care and support of a dependent child'; it is thus improper to include a dependent child's expenses in calculating an obligee spouse's reasonable needs." *McKown*, 280 S.W.3d at 175 (quoting *Cohen*, 73 S.W.3d at 51).

However, even if the expenses related to the children are excluded from Paula's estimated monthly expense, the motion court found and the evidence supports that her reasonable needs would still be greater than her monthly income. The motion court specifically noted in its judgment that Paula had overestimated some of her expenses and included improper expenses for the children in her evidence regarding her reasonable needs. The motion court also noted that while some expenses were overestimated, they were not overestimated as drastically as claimed by William. It is clear that the motion court properly excluded the improper amounts but still found that Paula's reasonable needs exceeded her reasonable income and that she remained in need of maintenance. These findings are supported by the evidence. The motion court did not abuse its discretion in finding that the change in Paula's expenses was not a substantial and continuing change in circumstances justifying a reduction or termination of maintenance.

William also argues under this point that Paula could meet her reasonable needs if she made a good faith effort to seek full-time employment. This argument was already addressed in William's first point on appeal. We will not address it again here.

Point Two is denied.

19

## Points Three and Four

## Standard of Review

In Points Three and Four, William challenges the motion court's determination of each parties' income for purposes of the child support calculation. "We will affirm the circuit court's judgment of child support unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Heckman v. Heckman*, 422 S.W.3d 336, 339 (Mo. App. W.D. 2013). "We will not disturb an award unless we find that the circuit court abused its discretion or 'that the evidence is palpably insufficient to support the award.'" *Blevins v. Blevins*, 249 S.W.3d 871, 873 (Mo. App. W.D. 2008) (quoting *Vendegna v. Vendegna*, 125 S.W.3d 911, 913 (Mo. App. W.D. 2004)). "The trial court is in the best position to determine the financial capability of a parent to assist in the support of the parent's child, including college expenses." *DeCapo v. DeCapo*, 915 S.W.2d 343, 348 (Mo. App. W.D. 1996). "When determining the correct amount of child support, the court can either accept or reject the parties' Form 14 calculations." *Heckman*, 422 S.W.3d at 340. "If the court rejects the parties' Form 14 calculations, it must do its own Form 14 calculations." *Id.* "We review a circuit court's Form 14 calculation 'to ensure the calculation was done accurately from a mathematical standpoint and that the various items and their amounts were included in the calculation and supported by substantial evidence.'" *Id.* (quoting *Lagermann v. Lagermann*, 109 S.W.3d 239, 245 (Mo. App. 2003)).

**Analysis Point Three**

In his third point on appeal William argues that the motion court erred in calculating child support by overstating his income. William argues that his income was overstated because it included half of the contributions his employer made to his 409A deferred compensation plan. William argues that these contributions were made at the discretion of the employer and were not currently accessible to meet William's current expenses.

For the purpose of determining child support, "income" includes "a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children." Form 14, Line 1, Comment A. "Among the income recognized in Form 14 as 'gross income' are dividends, capital gains, annuities and pension and retirement benefits." *Id.* at 341. "This list, however, is not exclusive." *Id.*

*Farr v. Cloninger*, 937 S.W.2d 760, 764 (Mo. App. S.D. 1997), held that employer's contributions to father's retirement plan are not appropriately considered as income in making the Form 14 child support calculations. The court found that father did not have the option to receive cash in lieu of the amounts contributed by the employer to the retirement plan. *Id.* at 763. The court held that since "there was no immediate benefit to Father from his employer's contribution to the retirement plan" and "there was no discernible way in which these contributions would be of any assistance to Father in satisfying any child support payments ordered by the trial court," the employer's contributions to the retirement plan should not have been considered as income received by father. *Id.* at 764. See also *Wofford v. Wofford,* 991 S.W.2d 194, 197-198 (Mo. App. W.D. 1999).

21

We find the employer's contributions to William's 409A plan to be similar to the employer contributions in *Farr*. Pursuant to the 409A plan, the only contributions that may be made are from William's employer and are at the sole discretion of the employer. Distributions from the account may only be made when William attains the age of 65, separation from service prior to attaining the age of 65, separation from service upon a change in control, unforeseeable emergency, disability, or death. As the court below acknowledged, if William was not part of the deferred compensation plan, it is doubtful William would receive the funds.

Therefore, under these facts there is no immediate benefit to William from his employer's contributions to the deferred compensation plan. The contributions are not made by employer in lieu of immediate compensation. There was no evidence that William was actively diverting otherwise available income into the deferred compensation plan. There is no discernible way in which the contributions made to the deferred compensation plan would be available to William in satisfying any child support obligation. The payments provide no positive impact on his immediate ability to pay child support. Accordingly, under these facts, we find that employer's contributions to the deferred compensation plan should not have been considered as income for purposes of determining William's gross income. *See Farr*, 937 S.W.2d at 763-64.

Adopting William's argument under this Point would reduce his gross income for purposes of the presumed child support calculation by $1,013.00 per month from $20,662.00 to $19,649.00. This would reduce the combined income for the child support calculation from $24,299.00 to $23,286.00. The combined child support amount would

22

therefore drop from $1,966.00 to $1,924.00. The motion court found William incurred $200 per month in child care costs, making the combined child support costs on line 9 of the Form 14 to be $2,124.00 per month. William's percentage of the combined income is 77.94% making his line 9 support obligation $1,655.00 before then subtracting his line 10 credit of $200 which would create a presumed child support obligation of $1,455.00 per month.

The motion court improperly determined the presumed child support amount and therefore Point Three is granted.

## Analysis of Point Four

In his fourth point on appeal William argues that the motion court erred in calculating child support by understating Paula's income. William argues that the motion court erred in failing to impute full-time employment income to Paula for purposes of calculating child support. William argues that the weight of the evidence showed that Paula was choosing to work less than full time and she was under a good faith duty to make reasonable efforts to become self-supporting.

> The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income. *See In re Marriage of Graham*, 87 S.W.3d 898, 900 (Mo. App. E.D. 2002); *Honderick v. Honderick*, 984 S.W.2d 205, 212 (Mo. App. W.D. 1999); *State ex rel. Atkinson v. Anthony*, 947 S.W.2d 832, 834-35 (Mo. App. W.D. 1997); *Quackenbush v. Hoyt*, 940 S.W.2d 938, 943 (Mo. App. S.D. 1997); *Hansen v. Phenicie*, 917 S.W.2d 618, 619 (Mo. App. E.D. 1996); *In re Marriage of Braun*, 887 S.W.2d 776, 779 (Mo. App. E.D. 1994); *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo. App. E.D. 1994). "In order to avoid such a situation, a court may, *in proper circumstances*, impute an income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Jensen*, 877 S.W.2d

23

at 136 (emphasis in original). What constitutes "proper circumstances" depends on the facts and must be determined on a case-by-case basis, but includes a situation where a parent has voluntarily reduced his income without justification. *Perkins v. Perkins*, 21 S.W.3d 184, 186 (Mo. App. S.D. 2000).

*Buchholz v. Buchholz*, 166 S.W.3d 146, 152-53 (Mo. App. S.D. 2005)(en banc). "Courts do not, however, interfere within the marital relationship to compel spouses to obtain employment which will generate the maximum possible income to support their children, or to mandate the employment which a spouse is required to take." *Id.* at 153.

As addressed in great detail in Point One, Paula has maintained employment as a hairstylist since the party's dissolution. Again, as the motion court acknowledged, due to the fact that hairdressers' hours are based solely on the number of clients, there is no guarantee Paula would have clients continuously for 40 hours per week. Paula's income has continuously increased since the time of dissolution. The motion court found that Paula was not underemployed and found her income to be reasonable based on all of the evidence. These findings were supported by the evidence.

Point Four is denied.

**Point Five**

**Standard of Review**

In his fifth point on appeal William argues that the motion court erred in ordering him to pay one-half of Paula's attorney's fees and expert witness fees. "Section 452.355.1 provides, in part, that the trial court, after consideration of the relevant factors, which include the financial resources of the parties, may order one party to pay the attorney's fees of the other party." *Stine v. Stine*, 401 S.W.3d 567, 572 (Mo. App. E.D. 2013). "The trial

24

court is an expert on attorney's fees, and has a wide latitude in the allocation of such fees and costs." *Id.* (citing *Erickson v. Blackburn*, 169 S.W.3d 69, 81 (Mo. App. S.D. 2005)). "The trial court's award of attorney's fees will be reversed only upon a finding of manifest injustice." *Id.* at 572-73.

### Analysis of Point Five

William argues that since two of the children were emancipated and the child support calculations were inaccurate, William was left with no other option than to proceed with a contested hearing. William further argues that the expert testimony was unnecessary since the case law was clear that the employer contributions to deferred compensation accounts are not to be considered income for purposes of child support. William further argues that Paula has assets enough to pay her own legal fees.

"As a general matter, parties in a domestic-relations case bear the cost of their own attorneys." *Arndt v. Arndt*, 519 S.W.3d 890, 915 (Mo. App. E.D. 2017). "Section 452.355.1, however, allows a motion court to award attorney's fees and costs after considering 'all relevant factors including [1] the financial resources of both parties, [2] the merits of the case and [3] the actions of the parties during the pendency of the action.'" *Id.* (quoting section 452.355.1). "Financial inability of the spouse to pay attorney's fees is not a requirement for awarding attorney's fees." *Katsantonis v. Katsantonis*, 245 S.W.3d 925, 929 (Mo. App. E.D. 2008). "On the other hand, one party's greater ability to pay is sufficient to support an award of attorney's fees." *Id.*

The motion court found that Paula incurred a total of $9,656.75 in attorney's fees and $1,512.50 in expert witness fees. The motion court expressly considered the financial

25

resources of both parties and William's unsupported claim for termination of maintenance. The motion court's analysis and the award of attorney's fees in an amount half of the attorney's fees incurred by Paula persuades us that trial court carefully considered its decision when awarding such fees. *See Arndt*, 519 S.W.3d at 915-16; *Bryant v. Bryant*, 351 S.W.3d 681, 691 (Mo. App. E.D. 2011). We are not persuaded that the motion court's decision was so arbitrary and unreasonable as to shock our sense of justice. *Id.* Therefore, the award of attorney's fees and expert witness fees was well within the motion court's broad discretion.

Point Five is denied.

## Point Six

### Standard of Review

In Point Six, William argues that the motion court erred in awarding Paula more than half of the combined disposable net income of the parties which is fundamentally unfair as a matter of public policy. William argues that this Court should adopt a formula which he asserts provides an "excellent fairness approach."

"Our view of the modification order is limited to determining whether it is supported by substantial evidence; whether it is against the weight of the evidence or whether it erroneously declares or applies the law." *Markowski*, 736 S.W.2d at 465 (citing *Grommet v. Grommet*, 699 S.W.2d 37, 38 (Mo. App. 1985)). "We give deference to the trial court's greater opportunity to judge the credibility of witnesses and the weight given opinion evidence." *Haynes v. Almuttar*, 25 S.W.3d 667, 671 (Mo. App. W.D. 2000). "The trial court is given considerable discretion as to the allowance and the amount of maintenance

26

payments, and it is the appellant's burden on appeal to demonstrate an abuse of discretion. *Id.* "An abuse of discretion occurs where the trial court's determination is so arbitrary and unreasonable that it shocks the sense of justice and indicates lack of careful consideration." *Ferry v. Ferry*, 327 S.W.3d 599, 602 (Mo. App. E.D. 2010). "If the determination by the trial court is supported upon any reasonable theory by the law and the evidence, this court must affirm." *Almuttar*, 479 S.W.3d at 138. (quoting *Hicks v. Hicks*, 798 S.W.2d 524, 526 (Mo. App. S.D. 1990)).

**Analysis of Point Six**

William argues that the motion court awarded Paula more than half of the combined disposable net income of the parties in child support and maintenance and that this is fundamentally unfair as a matter of public policy. William argues that this Court should adopt a formula which he asserts provides a "fairness approach." William asks this Court to adopt an approach to maintenance advocated by Douglas R. Beach[6] in an article entitled "One Way To Look At Maintenance." William cites to no case which has adopted the use of this formula or adopted the "fairness" analysis discussed in the article.

Briefly the approach William requests this court to adopt is that in a dissolution the party paying child support or maintenance should always retain a minimum of 57 percent of that party's after tax net income for their own support and the receiving spouse should never receive more than 50 percent of the combined net income of the parties. William argues that to provide the receiving party more than these amounts, allows the party

---

[6] Douglas Beach served as an Associate Circuit Judge in the 21st Circuit in St Louis County, Missouri from 2005 until his appointment as a Circuit Judge in 2010. He retired from that position in 2018.

27

receiving child support and maintenance to "coast." Apparently William believes that if the receiving spouse is awarded too high of an amount of child support and maintenance that that party will lose any incentive to become self-supporting and it is not fair for the paying spouse to have to pay too great of a percentage of their take home pay.

In attempting to apply Judge Beach's formula to the facts of this case, William uses income figures for each party that are inconsistent with the trial judge's findings and asks us to adopt income figures in the light most favorable to his own evidence. Even if we were to adopt the formula he requests, which we do not, his requested application of the facts to the formula would violate our standard of review.

The area of law regarding awards of maintenance and child support is expansive and well developed, giving broad discretion to the trial court in determining the appropriate maintenance and child support awards. We find no reason at this time to abandon this precedent and adopt the formula William advocates.

Point Six is denied.

## Conclusion

The judgment is affirmed in part and reversed in part. The presumed child support calculation is reversed and we find William's presumed child support obligation to be $1,455.00 per month. On remand the motion court shall determine whether this presumed child support amount is unjust and inappropriate based on the evidence adduced at the trial. If it is found to be appropriate the motion court shall order William to pay support in that sum, if it is found to be unjust and inappropriate the motion court shall enter a child support amount that it finds to be just and appropriate. No additional evidence shall be necessary

28

unless the motion court orders the parties to adduce evidence on this limited issue.  In all other respects the judgment is affirmed.


_____
Gary D. Witt, Judge

All concur